## No. 16,758.

### ROSIER *v.* THE PEOPLE.
(247 P. [2d] 448)

Decided July 14, 1952. Rehearing denied August 4, 1952.

Mr. Rowan Thayer Thomas, Messrs. Dickerson, Morrissey & Zarlengo, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Frank A. Wachob, Assistant, for the people.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

Richard Lacy Rosier, defendant below and plaintiff in error here, was convicted of the crime of assault with intent to "kill and murder" one Richard Allen Shanahan and sentenced to the penitentiary for a term of years. He is here by writ of error, seeking a reversal.

Herein we will refer to Richard Lacy Rosier as defendant and to Richard Allen Shanahan by name or as prosecuting witness.

The evidence for the prosecution may be thus summarized: The offense was committed in Teller county Colorado. Shanahan, the complaining witness, a young man of about eighteen years of age, had attended a show in Colorado Springs on the evening of June 16, 1948, and about 10 o'clock P. M. "hitchhiked" a ride to his home in west Colorado Springs in a car driven by defendant. During the ride defendant stated that he had recently purchased a ranch in Teller county. He offered Shanahan employment there, which Shanahan declined. Defendant

proposed that Shanahan go with him to the ranch in Teller county for the ostensible purpose of learning whether or not some surveying work had been completed. When they arrived at an isolated spot about two miles westerly of Woodland Park and a short distance from the main highway there, defendant made some indecent and unnatural proposals to Shanahan, which were not fully complied with, as a result of which defendant brutally beat Shanahan and left him in an unconscious condition. During the night Shanahan momentarily recovered consciousness, found himself undressed, and attempted to reach the highway where he saw the headlights of passing automobiles. After again losing consciousness and regaining it, he eventually reached the highway shortly after daylight, and was hastily taken by an autoist to a hospital in Colorado Springs, where he remained in a serious and unconscious condition for a considerable period of time.

Shanahan testified that the automobile being driven by defendant at the time of the assault was a 1946 Chevrolet, and this testimony is corroborated by other witnesses. It is admitted that at the time of the offense defendant or his parents were the owners of such an automobile, which defendant occasionally drove.

After the assault, and for some time thereafter, Shanahan's recollection of the details of the assault, as well as a detailed description of his assailant, was clouded, but eventually became cleared, and his testimony at the trial was such as to indicate no difficulty in recalling all of the events on the evening of June 16, 1948.

At some time in the following August, Shanahan recognized defendant as his assailant while defendant was making a purchase in a small grocery store operated by Shanahan's father, and he reported this to the Police Department of Colorado Springs, but defendant was not then apprehended. Some time shortly before June 16, 1950, defendant was taken into custody, and Shanahan then being in North Dakota, in early June, 1950, returned

to Colorado Springs for the purpose of determining whether he could identify defendant as his assailant. In a police "line-up" his identification was positive. He also positively identified defendant as his assailant at the time of the trial.

Defendant, when called as a witness, positively denied the charge and relied principally on an alibi as his defense.

On cross-examination defendant was interrogated with reference to certain statements allegedly made to I. B. Bruce, the Chief of Police of Colorado Springs, Colorado, pertaining to his connection with the offense charged, and upon his denial that any such statements were made, Chief Bruce was called and interrogated with reference thereto for the purpose of impeachment.

Defendant's father, mother and one other witness testified to facts, which, if believed by the jury, would have made it absolutely impossible for defendant to have been Shanahan's assailant.

The trial was begun on August 22, 1950, and on said date defendant caused a subpoena duces tecum to be issued and served on the district attorney, on I. B. Bruce, and on other police officials, requiring the officers to appear on August 23, 1950, and produce for his attorney's inspection the following records, which were specified in the subpoena duces tecum as:

"1. The case history of the Shanahan case, now in your custody and control, said instrument being comprehensive typewritten report and record of everything having happened in the Shanahan affair since June 16, 1948, and having been kept in the office of I. B. Bruce, at various times during the past year, and being the record shown to the defendant, Richard L. Rosier, by I. B. Bruce;

"2. All early police reports, now in your custody or control, reduced by writing made by the officers or other police officers interested in the investigation of the case;

"3. Copies of all letters or wires, now in your custody

or control, sent out to other police officers, or the Federal Bureau of Investigation, concerning the Shanahan case, between the dates, June 16, 1948, and May 25, 1950;

"4. All other records kept by the police department of Colorado Springs, Colorado, where entries in docket books, narrative accounts, notes or otherwise, now in your custody or control concerning the Shanahan case, compiled or made between the dates, June 16, 1948 and May 25, 1950."

During the trial I. B. Bruce, Chief of Police of Colorado Springs, was called as a witness for the prosecution and interrogated with reference to an interview he had with defendant on the 27th day of May, 1950. He was asked whether in this interview he had advised defendant of his constitutional rights and whether at that time, after having done so, the defendant made admissions with reference to the Shanahan attack. To this question objection was made, and the jury excused. The district attorney took the position that the interview mentioned resulted in defendant's confession. After some testimony by Chief Bruce, the court determined that defendant's statements were not sufficient to constitute a confession. Defendant's counsel then requested the court to "make a ruling on producing these case histories of the case." Whereupon the court stated, "As far as that is concerned I think Chief Bruce is under subpoena to produce the *statements* that the complaining witness made—as to the description of the person and description of the car. So, if you will have those statements here, I will rule as to whether or not the attorney for the defendant may examine them."

It developed that Chief Bruce had a case report in his possession consisting of sixty pages containing a case (Shanahan) report, and that therein was set out everything that had transpired in connection with the cause on trial. The court having indicated that such of the subpoened documents as pertained to "the description of the person and the description of the car" might be ad-

missible; defendant's counsel insisted upon a ruling on all of the documents and records mentioned in the subpoena duces tecum, whereupon the court denied categorically defendant's right to inspect documents and records specifically mentioned in the subpoena duces tecum.

There are twenty-six assignments of error presented here under the following five subdivisions: 1. Overruling defendant's motion to require the production and permitting the inspection of the documentary evidence specified in the subpoena duces tecum; 2. in admission of evidence; 3. in refusal to give tendered instructions; 4. misconduct of the district attorney; 5. insufficiency of the evidence.

1. It will be observed that the subpoena duces tecum included all the files and records in the possession of the Police Department covering a period from June 16, 1948, to May 25, 1950, in so far as they in anywise pertained to the Shanahan case. It also should be stated that defendant's counsel never specified to the trial court just what subpoened documents he desired to inspect or the purpose for which the inspection would be made, and when the court suggested a limitation on the use of such documents, it was then that defendant's counsel, as we have said, insisted upon a ruling upon his right of inspection and examination of all the documents and records specified in the subpoena. In his brief filed here, defendant's counsel states that, "The pretrial investigation of the case disclosed that the prosecuting witness had given conflicting descriptions of his attacker and the automobile involved to various persons including I. B. Bruce, the Chief of Police of Colorado Springs." No attempt was made to base a cross-examination on these conflicting descriptions. Further, there is a statement in the brief that it was vital to the defense to examine all of the documents and records in the Shanahan case for four purposes: first, for cross-examination of the prosecuting witness; second, for cross-examination of Chief

Bruce; third, for the purpose of impeachment of the prosecuting witness and Bruce, and, fourth, to place before the jury all of the evidence as to the identity of the attacker. No such purpose or reason for the examination of the subpoened documents was ever indicated in the trial court.

■ Counsel, in an effort to support his contention that error was committed by the trial court in refusing to permit the inspection of the entire police records mentioned in the subpoena duces tecum, quotes selected portions from volume 2, Wharton's Criminal Evidence (11th ed.) pp. 1353-1355, §785; *Asgill v. United States,* 60 F. (2d) 776; and *Battalino v. People,* 118 Colo. 587, 199 P. (2d) 897.

Counsel omitted from Wharton, supra, pertinent parts thereof, and those which irrefutably established that no error was present. We quote some of those omitted portions: "The document sought [by subpoena duces tecum] must be specified with reasonable certainty, must be relevant to the issues involved, and to authorize their production, there must be a substantial showing that the books, papers, or documents sought for contain material evidence in support of the use for which they are intended. A mere suspicion that a record contains such evidence does not warrant an order for its production, nor is a general 'fishing expedition' into all the books and records of an adverse party permissible. When the essential requirements are complied with, the court, according to the circumstances of the case, will order the production of the document. However, in criminal cases, it is very evident that the accused cannot compel the prosecution to produce documents which he himself has made. Thus, he is not entitled to have incriminating letters, written by him, produced for his inspection; nor to have produced a statement made and signed by him even on the ground that such statement is material to his defense. *As to evidence in the possession of the prosecution, the general rule is that the accused has no right to*

*inspection or disclosure of the same.* However, it has been held to be error to refuse to permit compliance with the defendant's demand for production of letters written by a witness for the government for the purpose of impeachment, when such letters were in the possession of the attorneys for the government, and were in the courtroom." (Italics ours.)

It is to be remarked that the author cites cases in seventeen jurisdictions to support his statement that the accused is not entitled to the inspection or disclosure of evidence in the possession of the prosecution and states that there are apparently three jurisdictions in the United States holding otherwise.

In *Asgill v. United States, supra,* there were two assignments upon which error was based; one was the refusal of the trial court to require the prosecuting attorney to permit an examination and inspection of letters in his possession written by a witness. The purpose for which the letters were requested was for cross-examination and for impeachment of the witness. The other was the refusal of the trial court to admit letters in defendant's possession and signed by the witness then being interrogated, these letters being important for the purpose of impeachment. It was there held that the letters, if introduced, would be a flat contradiction of the witness' testimony and the trial court's refusal to grant inspection and admit the letters in evidence was held to be error. In the present case it should be remembered that defendant's counsel presented no reason or purpose whatever to the trial court, intimating, or even suggesting, any need for the inspection of the documents mentioned in the subpoena duces tecum. The documents so mentioned could not be introduced in evidence for the purpose of impeaching the prosecuting witness, there being no evidence whatever that this witness knew that a record was being kept; nor is there evidence that he had ever seen any documents mentioned in the subpoena duces tecum. The most casual reading of the opinion in *Asgill v.*

*United States, supra,* will convince one that it has no application to the factual situation in the instant case.

In *Battalino v. People, supra,* a subpoena duces tecum was served on the district attorney, requiring him to produce at the trial written statements of the chief witness for the prosecution, and error was urged there because the trial court refused to require the prosecution to submit these written statements. It may be said that a subpoena duces tecum is a writ commanding a person having possession or control of documents that are pertinent to the issues to produce these documents for use either at a trial or in a proceeding where an inquiry with reference thereto is authorized by statute or rule of court. In the Battalino case the uncontradicted testimony of the district attorney was that one of the statements called for in the subpoena duces tecum had never been in his possession or control; that as to the other he had only a copy thereof; and that its accuracy could not be verified by him. We held that the copy "was not competent evidence of whatever statements it may have contained; it could not have been used for impeachment of the witness, * * *. Refusal to permit inspection of such copies has been held proper. [citing cases]"

The district attorney, not having had the signed statements of the prosecuting witness in his possession or under his control, the purpose of the subpoena duces tecum failed. It is true that in *Battalino v. People, supra,* our court discussed the right of inspection of written statements of the witness for the prosecution when demand therefor is made by defendant's counsel. In that case the demand for witness' statement was limited solely for use in the impeachment of the witness and not for discovery purposes. To construe it otherwise makes all said with reference thereto obiter dictum. Furthermore, the records and files in the present case were not those of the prosecuting witness, and, so far as the record reveals, he had no knowledge thereof. Here, on the record, defendant's counsel was on a "fishing expedition."

We have heretofore called attention to the inadvertence of counsel in omitting portions of a paragraph from Wharton's Criminal Evidence, supra, and we again call attention to another inadvertence of counsel. In the first full paragraph in *Battalino v. People,* on page 597, counsel in their brief quote beginning with the word "Where" in the fifth line thereof and end with that paragraph. The first sentence in the full paragraph reads: "The granting or refusal of the accused's request for inspection of written statements of a witness for the prosecution has been held to lie in the discretion of the trial court. [citing cases]" Under the evidence in the Battalino case, the district attorney could not be compelled to furnish statements of which he had no possession or control, and counsel have overlooked calling our attention to our ruling in that case.

In *Silliman v. People,* 114 Colo. 130, 162 P. (2d) 793, paragraph 2 of the syllabus, supported by the opinion and a long list of authorities, reads: "A written confession of defendant in a criminal case may be retained by the prosecuting officers until such time as they desire to make use of it. No right of defendant is violated when his motion to inspect the document before it is offered in evidence is denied, that right being accorded him when it is formally offered."

In the present case the records called for by the subpoena duces tecum could never have been introduced in evidence; they were incompetent for that purpose; as to the prosecuting witness, they were hearsay. In addition to the authorities cited in *Silliman v. People, supra,* we call attention to *Struna v. People,* 121 Colo. 348, 215 P. (2d) 905; *Cassinetti v. District Court of El Paso County, etc.,* No. 16762 on the docket of this court; *United States v. Socony-Vacuum Oil Company,* 310 U.S. 150, 60 Sup. Ct. 811, 84 L. Ed. 1129; *Goldman v. United States,* 316 U.S. 129, 62 Sup. Ct. 993, 86 L. Ed. 1322; *United States v. Muraskin,* 99 F. (2d) 815; *United States v. Dilliard,* 101 F. (2d) 829; *Shores v. United States,* 174 F. (2d) 838;

*United States v. Walker,* 190 F. (2d) 481; *State v. Gloyd,* 148 Kan. 706, 84 P. (2d) 966; *State v. Painter* (W.Va.) 63 S.E. (2d) 86; *Commonwealth v. Galvin,* 323 Mass. 205, 80 N.E. (2d) 825; *State v. Mattio,* 212 La. 284, 31 So. (2d) 801; *McAden v. State,* 155 Fla. 523, 21 So. (2d) 33; *State v. Lack* (Utah), 221 P. (2d) 852; *People v. Santora,* 51 Calif. App. 707, 125 P. (2d) 606; *State v. Payne,* 25 Wash. 407, 171 P. (2d) 227; *State v. Thomasson* (Ohio), 97 N.E. (2d) 42; *Cramer v. State,* 145 Nebr. 88, 15 N.W. (2d) 323; *State v. Richetti,* 342 Mo. 1015, 119 S.W. (2d) 330; *State v. Yee Guck,* 99 Ore. 231, 195 Pac. 363; 52 A.L.R., p. 207; 156 A.L.R. 345; 14 Am. Jur., p. 915, sec. 210; 23 C.J.S., p. 424, sec. 1036; 6 Wigmor on Evidence (3rd ed.), p. 475, sec. 1859 (g).

 In this jurisdiction there is neither statute nor precedent authorizing defendant's counsel to make an examination or inspection of the People's evidence prior to the time that it is offered on the trial. Under some most unusual circumstances defendant may be entitled to inspect and examine documents in the possession of the law enforcing officers, but then he first must make a prima facie showing of their materiality. Here it is obvious that defense counsel wished an opportunity of rummaging at will through the officers' files and documents on a "fishing expedition" hoping thereby to discover something which they could use in their client's defense. Under our system of jurisprudence, defendant in a criminal case is clothed with a presumption of innocence, and the burden is upon the People to prove him guilty beyond a reasonable doubt. If, in addition to his presumption of innocence and the burden with reference thereto which is placed upon the People, defendant is also entitled to know beforehand the evidence upon which the People will rely for a conviction, success in criminal prosecutions may become rather rare, and the law enforcing officers' task become more or less hopeless. We recognize that the People, as well as defendants, are entitled to protection, but we think there are sufficient

safeguards now for defendant's protection without making our law enforcing officers the servants of defendants in assembling and unearthing evidence for their use in escaping the penalties for their lawlessness. There was no error committed by the trial court in refusing defendant's counsel the right of inspection and examination of the files and records in the Shanahan case kept by the law enforcing officers until or unless they were offered in evidence.

2. Defendant, on cross-examination, was interrogated with reference to certain statements which he is said to have made to Chief Bruce with reference to his connection with the Shanahan case. The questions were so worded as to indicate very clearly that they were asked for the purpose of laying a foundation for impeachment of the witness, and upon objection by defendant's counsel that these questions were outside the scope of his direct examination, the court ruled that the questions were material and if asked for the purpose of laying a foundation for impeachment, they were relevant. When defendant was being cross-examined, the prosecuting attorney laid a proper foundation for impeachment by asking him about certain alleged self-incriminating statements made to Chief Bruce on a certain day, at a certain time and place, and calling attention to the surrounding circumstances, and defendant categorically denied making such statements. He was asked if at the time and place specified he did not state to Chief Bruce: "I don't deny that I am implicated in the Shanahan case." "I may have committed these acts, I don't know." "I have felt for the past ten years that my mind was slipping." "I have felt it coming on me. My mannerisms have changed." "I am extremely nervous and I get very mad but can control my temper if left alone." "One side of my brain tells me that I could not and would not have committed this act while the other side of my brain tells me that I could and would have committed this act." "Apparently I must have committed these acts." "I don't

remember committing these acts, but I don't deny that I committed them." "Everything I did was on a sex impulse."

■ Chief Bruce, called as a witness in rebuttal, testified that during the questioning of defendant he stated, "I don't deny that I am implicated in the Shanahan case," and objections were sustained, or the prosecuting attorney failed to interrogate with reference to, any other statements. It is contended, first, that the trial court erred in permitting the district attorney to lay his foundation for impeachment by asking the questions while defendant was under cross-examination because it is said that they were highly prejudicial and tended to show that defendant had committed a crime independent of the offense for which he was on trial; second, that it was an attack on defendant's reputation when the same had not been put in issue by defendant himself, and, third, that the questions having been propounded from the police records which were not admitted as a confession, this also constituted error. The first objection is wholly without merit.

The second objection is likewise without merit. The impeachment was not to establish defendant's bad reputation in the community but was for the purpose of attacking his credibility by showing that at other times and places and under different circumstances he had made admissions contrary to his testimony while a witness. If this objection is valid, it is difficult to conceive under what circumstances the credibility of any witness could ever be questioned.

With reference to the third objection, the court held that the written statements made to Chief Bruce and which defendant sought to inspect and examine under his subpoena duces tecum were not such as to amount to a confession although it stands uncontradicted that the statements were voluntarily made after due and proper warning to defendant. The court having determined that the statements did not amount to a confession, it fol-

lowed as a matter of course that they were not admissible as such, but it did not destroy the efficacy of the statements for evidentiary purposes and deprive the prosecution of the right to use the same for impeachment.

Counsel again fail to mention all of section 425, Underhills Criminal Evidence (4th ed.), but quote only one sentence therefrom which we hold is wholly inapplicable to the situation here.

The trial court, in order to avoid any possibility of prejudice to defendant by questions asked him on cross-examination, properly instructed the jury that: "In arriving at your verdict, as to the facts you can consider only evidence received by testimony or stipulation in open Court. Evidence offered or received for a special purpose can be considered for no other. Evidence stricken is the same as though never received. * * *" There was no error in the admission of evidence called to our attention by defendant's counsel.

3. Defendant's counsel assign error in the court's refusal to give their tendered instruction No. 1. Counsel in their brief state, "That the main question in the case was the identity of the person who assaulted the prosecuting witness," and that their tendered instruction No. 1 was based on mistaken identity. It reads: "You are instructed that if you believe from the evidence and the circumstances proved that there is a reasonable doubt whether the witness, Richard A. Shanahan, is mistaken as to the defendant's identity, then you would not be authorized to convict the defendant."

In support of this assignment, counsel call our attention to the decision in the case of *People ex rel. v. Rischo,* 262 Ill. 596, 105 N.E. 8, and quote therefrom the following: "Instruction No. 1 of defendant's refused instructions was not strictly accurate, and could have been in better form, but we think it should have been given, as the only question in the case was the identity of the de-

fendant, and the jury should have been instructed on that point."

Counsel neglected to bring to our attention the next succeeding paragraph in the opinion, reading, "We do not think the giving of the instructions complained of or the refusal of defendant's instruction No. 1 would be sufficient error, alone, to justify a reversal of the case if the evidence sufficiently showed the guilt of plaintiff in error. With the evidence as it is in this record, the instructions should have been entirely free from error."

We have examined the instructions given and have considered the three instructions tendered. We are satisfied that the law governing the jury in the trial of the case was carefully and properly set forth in the court's instructions and that no error was committed by the court in failing to give defendant's tendered instructions.

4. Under this assignment defendant's counsel contend that there was misconduct on the part of the district attorney sufficient to justify us in reversing the judgment in this case. We have read the arguments of counsel in a record containing 1358 folios, and find that they made an objection to a statement in the district attorney's closing argument, which was as follows: "He [defendant's counsel] has gone on a little bit about the fact that this defendant leads a perfectly normal life, didn't want anything to get into the case that has been intimated and hasn't been admitted in evidence—and we don't want it either—but, just by way of explanation we do want to remark for your consideration and to rebut the impression that I think he left with you—the reason for this man's arrest. *He wasn't arrested for this offense. Why didn't he tell you what offense he was arrested for?*" (Italics ours) The objection was sustained, and the court then and there instructed the jury to disregard the remark.

Except as the words "acts" or "crimes" were allegedly used by defendant himself in answering questions propounded to him by the police officers, there is no intima-

tion in the entire record that defendant was in anywise connected with the commission of other offenses, and the court having sustained defendant's counsel's objection to the question italicized above and instructed the jury to disregard it, we must, and do, assume that the jury followed the court's instructions, and if there is evidence in the record from which the jury might infer that defendant had some connection with other offenses in Teller or adjoining counties, that is a matter for which neither the court nor the prosecuting officers can be held accountable.

There was no error committed by the district attorney to which our attention has been directed.

5. Counsel take the position that the evidence was insufficient to support the verdict. Defendant was positively identified by the prosecuting witness as his assailant. Other witnesses identified the car which the assailant was driving on the night when the assault took place. Defendant relies chiefly on an alibi, and if the jury had believed him and his witnesses, a verdict of not guilty would have been returned. As it was, the jury, under the instructions of the court, must have been convinced beyond a reasonable doubt that defendant made an assault on the prosecuting witness with intent to "kill and murder" him. There is competent evidence in the record to support the jury's verdict, and the trial court, having had the opportunity of seeing and hearing the witnesses as they testified, must have been convinced beyond all doubt that defendant was guilty because the sentence imposed was much greater than this trial judge would have imposed under any other circumstances.

The judgment is affirmed.