In re Samuel James MASSEY, a/k/a Nos.
S. J. Massey and Joe Massey, Edith Inasencia Massey, Individually and Massey
Oil Field and Production Service, Inc.,
Plaintiffs,

v.

E. M. RIEBOLD, Jane Riebold, Jed Giles,
C. R. Robinson, Baca-Western Natural
Gas Company, Inc., et al., Defendants.

Bankruptcy No. 79 M 0035.

United States Bankruptcy Court,
D. Colorado.

Feb. 28, 1980.

Stephen F. Lawless, Albuquerque, N. M., and Michael A. Maxwell, Denver, Colo., for plaintiffs.

Daniel T. Goodwin, Aurora, Colo., for defendants.

## MEMORANDUM OPINION

JOHN P. MOORE, Bankruptcy Judge.

THIS CASE is before me following removal from the District Court of Baca County, Colorado pursuant to 28 U.S.C. § 1478(a). Prior to removal, a two week jury trial on a complaint for damages arising out of an oil well drilling contract between the parties resulted in a verdict against the Defendants in the amount of $469,034.82. Thereafter, the Defendants filed a motion for a new trial alleging many substantive errors. After deliberating for some five months, the state judge decided "manifest error" had occurred, and the verdict was set aside. It was after this ruling that removal took place.

The case is now before me on the Plaintiffs' motion to reinstate the jury verdict. The Plaintiffs allege that the decision to vacate the verdicts was fundamentally erroneous, and they maintain this Court must effectively overrule the state court in order to preserve judicial integrity.

### I

In view of the position taken by the Plaintiffs, the first question that must be answered is whether this Court is possessed of the legal capacity to grant the relief sought. I am unequivocally of the opinion that this question must be answered in the affirmative. First, 28 U.S.C. 1479(c) states:

> All injunctions, orders, or other proceedings in any action prior to removal of such action under section 1478 of this title shall remain in full force and effect until *dissolved or modified* by the bankruptcy court. (emphasis added)

Second, prior cases instruct that once a case has been removed to a federal court, federal and not state law governs the future course of the proceedings, notwithstanding state court orders issued prior to removal. *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 437, 94 S.Ct. 1113, 1123, 39 L.Ed.2d 435 (1974). Further, after removal a federal court should treat everything that occurred in the state court as if it had taken place in

federal court. *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963). Hence, we may turn to federal case law to determine whether one federal trial judge has jurisdiction to overrule another. In such cases, it has been held that if the second judge becomes firmly convinced that an error of law has been committed by the first judge, the error may be corrected.

In *Castner v. First National Bank of Anchorage*, 278 F.2d 376 (9th Cir. 1960), the Court of Appeals for the Ninth Circuit ruled that there is no abuse of discretion for a successor judge to overrule a predecessor when it is necessary for the successor judge to conscientiously carry out his judicial function. Thus, the successor judge can "settle the questions presently without compelling the parties to proceed with what may be a futile and expensive trial". The avoidance of such futility is a cogent reason and an exceptional circumstance which justifies a departure from a rule of comity within the permissible limits of judicial discretion. *Id.* at 380. See also *Preaseau v. Prudential Insurance Co. of America*, 591 F.2d 74 (9th Cir. 1979); *United States v. Thomas Steel Corp.*, 107 F.Supp. 418 (N.D. Ohio, 1952).

I am thus satisfied that if it appears the interests of justice will best be served by reinstating the jury verdict, it is not only within my power, but it is also my duty to do so. Accordingly, we turn to the substantive issues inherent in the motion.

## II

■ The first reason given by the state court for granting the motion for new trial was a statement made by Plaintiffs' counsel in his summation to the jury. Unfortunately, the ruling was made by the Court without the benefit of a transcript of the statement; therefore, the judge relied on what has proved to be an inaccurate recollection of what was said. The transcript was introduced in this Court, and we now have the benefit of a greater appreciation of the record than that of the state court.

In his final argument, counsel for the Plaintiffs stated:

And when you consider in the testimony whether Mr. Massey completed this and whether they would have paid him as they got those things, you can consider that these particular people have a record a mile long on this kind of stuff. They have gotten to people from here to who knows where. There's in evidence a conviction showing 80 counts of various kinds of fraud. (Reporter's Transcript, closing arguments at 10)

An objection was made at this point by counsel for the Defendants that the statement was "going a little bit beyond". The court sustained the objection and stated:

Ladies and gentlemen, you are instructed to disregard that part of the remark from counsel. (*id.*)

No motion for mistrial was made, nor does it appear that such action was considered *sua sponte*. After reflecting upon the motion for new trial, and despite the fact he apparently found nothing inherently prejudicial in the statement when it was made, the state judge ruled the statement was so prejudicial that it could not be cured by a cautionary instruction. Remembering that the judge did not have the record before him, it becomes apparent that he was unable to judge the statement in context. In fact, the record indicates the statement was made as a comment upon the credibility of the testimony of the Defendants, and it even appears in keeping with the evidence.

Contrary to the assertion of Defendants' counsel in this Court that Mr. Riebold was only convicted of three counts of an 80 count indictment, the "Judgment and Probation/Commitment Order" admitted as Plaintiffs' Exhibit I in the trial shows that in fact he had been convicted of no less than 72 out the 80 counts of criminal fraudulent conduct. In light of that fact, it seems hardly likely that the statement was so inaccurate that it had a prejudicial effect upon the jury.

Assuming, *arguendo*, that the statement made by Plaintiffs' attorney was either beyond the record or otherwise objectionable,

it appears to this Court that any error was cured by sustaining the objection and admonishing the jury to disregard the statement.

In the absence of a showing to the contrary, . . . the jurors must be presumed to be honest, intelligent, dispassionate and fair-minded men; to have faithfully performed their duties as jurors, and to have complied with the instructions of the court and determined the verdict solely upon the facts in evidence. *Mere possibility of prejudice is insufficient to warrant a reversal.* O'Loughlin v. People, 90 Colo. 368, 380, 10 P.2d 543, 547 (1932). (emphasis added)

Similar statements to the one at issue here have been held to be not so prejudicial as to require a new trial where the court has instructed the jury not to consider them. For example, in *Candelaria v. People*, 177 Colo. 136, 493 P.2d 355 (1972), the impropriety of the district attorney's remarks in closing arguments was at issue. The district attorney had stated:

[I]n considering the testimony of the defendant himself you may consider the fact that he has previously been convicted of armed robbery [and] that he is conwise. . . .

There, the Colorado Supreme Court held that the trial court did not err in denying the defendant's motion for a mistrial because the court immediately instructed the jury to disregard the remark. Citing *Rosier v. People*, 126 Colo. 82, 247 P.2d 448 (1952), the Court held that it must presume that the jury followed the trial court's instructions. See also: *State v. Thompson*, 293 N.C. 713, 239 S.E.2d 465 (1977).

Remarkably comparable to this case is *Dickson v. People*, 82 Colo. 233, 259 P. 1038 (1927). There, where the defendant had been charged with the theft of one thousand dollars, the prosecutor told the jury:

I am letting my feelings get beyond me. 'If you steal $50 dollars, you are guilty of grand larceny, and liable to go to the penitentiary; if you steal $20,000 dollars, you are guilty of glorious larceny . . and are to be commended for your ingenuity in being able to slip it over . . on the poor stockholders of the corporation . . . .' 82 Colo. at 236, 259 P. at 1040.

The jury was instructed that the arguments of counsel were not evidence, and was cautioned to disregard the language. As in the above cases, the court held no new trial was granted, because of the curative effect of the cautionary instruction.[1]

Following this line of cases, and considering them as illustrative of how extremely prejudicial a statement must be in order to warrant a mistrial in the face of a curative instruction by the court, I find that any misconduct of the Plaintiffs' attorney here in his closing argument was not of sufficient moment to warrant the granting of a new trial. When the statement is taken in context, it is not only unlikely that it caused actual prejudice in the minds of the jury, but it also must be presumed that the jury followed its instructions to disregard the remarks. Therefore, in my opinion, the granting of the new trial on this particular issue constituted a manifest error of law which, in the interests of justice, must now be corrected.

### III

The second ground upon which the state judge granted a new trial was his conclusion that an instruction on damages was improper, and therefore manifest error requiring a new trial even in the absence of an objection. The allegedly objectionable portion of the instruction charged the jury to award as damages:

The fair market value of one/seventh of the gas well drilled provided as to these

---

1. Statements by counsel may indeed be incurably prejudicial. References to race and national origin are one example. See: *Miller v. People*, 70 Colo. 313, 201 P. 41 (1921), where a criminal conviction was reversed after the prosecutor made incorrect and prejudicial references to the German heritage of the defendant. Apparently extreme anti-German sentiment in the locale at that time prompted the reversal, particularly since the case was "close".

damages, you not only find by a preponderance of the evidence that they were a natural and probable consequence of the claimed breach of the contract by the defendant . . ., but also that at the time the parties entered into the contract, the defendants reasonably could have anticipated from the facts or circumstances that they knew or should have known that these damages would probably be incurred by the plaintiff if they, the defendants, breached the contract.[2]

■■■ Rule 51 of both the Colorado Rules of Civil Procedure and the Federal Rules of Civil Procedure requires that counsel must raise objections to instructions before they are given to the jury. A failure to do so generally amounts to a waiver of any impropriety in the instruction. This rule precluding review absent timely objection "is not inexorable, and in rare instances, where the error is fundamental and results in a miscarriage of justice, . . . [courts] will notice such error despite counsel's failure to comply with Rule 51." *Hoffman v. Sterling Drug, Inc.*, 485 F.2d 132 (3rd Cir. 1973). The power to consider errors to which no objections were made must be used sparingly and only in the interests of justice. *Prebble v. Brodrick*, 535 F.2d 605 (10th Cir. 1976). Here, I can find no reason why it was in the interests of justice to grant a new trial on the basis of an alleged error in Instruction 22. The absence of an objection from the Defendant makes it especially true.

In this circuit, it has been held that "a party who claims plain error within the reach of Rule 51 . . ., has the heavy burden of demonstrating fundamental injustice." *Clegg v. Conk*, 507 F.2d 1351 (10th Cir. 1974), *cert. den.*, 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975). In *Conk*, though adequate opportunity was provided, the appellant neither offered instructions nor assisted the Court in framing a proper instruction on the point later claimed to constitute error. The contention was that an inadequate charge was given the jury on

the "scienter" element of securities fraud. However, because the appellant failed to meet his burden of demonstrating fundamental injustice, no reversible error was found.

Here, not only did the defendant have an adequate opportunity to tender damage instructions to the court, but all instructions, and this one in particular, were negotiated between the parties and the court. It is particularly noteworthy that the only objection made to Instruction 22 was made by the Plaintiffs.

Plaintiffs took the position that because of Defendants' breach, Plaintiffs were entitled to an entire well and not one-seventh of the market value of the well drilled. Thus, it would seem, the instruction given appears to have worked in favor of the defendants, as opposed to their detriment.

Where there is a full and uninhibited opportunity to object to a charge, the "plain error" rule should be applied particularly sparingly.

> [I]f the trial court in fact *prevented* the objection from being made, an inviting case for the application of the "plain error" rule would be presented. . . . We are satisfied that appellants had full and uninhibited opportunity to object to the charge concerning the liability . . . if they desired but failed to do so. The trial of this cause was long and expensive and the contentions underscore the need for strict compliance with the rule [51] which treats as waived that to which no timely objection was made.

*Koninklijke Luchtvaart Maatschappij N. V. KLM Royal Dutch Airlines Holland v. Tuller*, 110 U.S.App.D.C. 282, 292, 292 F.2d 775, 785 (C.A.D.C.1961), *cert. den.*, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961).

There is no doubt that the Defendants had a full and fair opportunity to timely raise the objection subsequently presented in their motion for new trial, but they did not. Neither did they tender a more appropriate instruction of their own. Hence, I

---

2. It should be noted that with the exception of the first phrase this instruction is a verbatim copy of *Colorado Jury Instructions—Civil*, ¶ 23:36(2).

can find no reason to follow the "plain error" rule unless the instruction was so far from stating the correct law on damages that fundamental injustice resulted.

 As a general rule, expectation interest of a party to a contract is protected where the contract is breached.

This is the interest of the non-defaulting party in being placed in the same financial position in which he would have been had there been no breach. Generally, to the extent that anticipated gains were reasonably foreseeable by the defaulting party at the time the contract was entered into and can be proved with reasonable certainty, the law of damages grants recovery based upon those anticipated gains. 22 *Am.Jur.2d, Damages* § 46 at 73.

Although the syntax of Instruction Number 22 is cumbersome, I believe it is reasonably consistent with this rule of law. Because of the wording of the instruction, it appears that the jury would only have awarded one-seventh of the market value of the well if it found that the parties anticipated these damages would be incurred by the Plaintiffs if the contract was breached. From the amount of the verdict we can presume the "one-seventh value" was included; therefore, the jury must have found it to have been in the reasonable anticipation of the parties.

 In his order granting the Defendants' motion for a new trial, the state judge took the position that "the jury should have been instructed that the Plaintiff was to receive reasonable compensation for his services above the $5,000.00 payment, and that it could consider in fixing the reasonable compensation that had seven wells been completed Plaintiff would be entitled to the seventh well." It is arguable, with 20/20 hindsight, such an instruction would have been better. However, it appears to me that it is equally likely that if the jury were given that instruction, they would have reached exactly the same verdict on the state of the evidence. Where this is so, the verdict must stand. Cf. *Sheppard Federal Credit Union v. Palmer*, 408 F.2d 1369 (5th Cir. 1969).

Upon these circumstances, I find that the Defendants have failed to demonstrate a case for vacating the verdict. A new trial should not have been granted on either of the grounds chosen by the state court.

Accordingly, the Plaintiffs' motion to reinstate the jury verdict will be granted. Having so decided, it is not necessary to consider Plaintiffs' motion for summary judgment. A judgment will enter for the amount of the jury verdict plus interest and costs, minus $23,097.69 which has already been paid to the Plaintiffs by the Defendants.