## STATE OF NORTH CAROLINA v. FRANK GAINEY

### No. 120

### (Filed 28 January 1972)

1. **Constitutional Law § 32; Criminal Law § 21— waiver of counsel and preliminary hearing — trial on more serious charge**

    Defendant's waiver of counsel and preliminary hearing in the district court on a charge of common law robbery was not rendered invalid by the fact that defendant was not tried in the superior court for common law robbery but was thereafter indicted and tried for armed robbery.

2. **Constitutional Law § 32; Criminal Law § 21— necessity for preliminary hearing — appointment of counsel**

    While a preliminary hearing is not an essential prerequisite to a bill of indictment, an indigent defendant is entitled to the appointment of counsel if such a hearing is held. G.S. 7A-451.

3. **Criminal Law § 161— form of assignments of error**

    An assignment of error "To the court's overruling of defendant's objection to questions by the solicitor concerning defendant's previous arrest" does not comply with Supreme Court Rule 19(3) since it does not itself specifically show the questions sought to be presented.

4. **Criminal Law §§ 86, 89— impeachment of defendant — arrest or indictment for other crimes — commission of specified criminal acts**

    For purposes of impeachment, a witness, including the defendant in a criminal case, may no longer be asked if he has been arrested or indicted for a specific offense, but he may be asked whether he has *committed* specific criminal acts or been guilty of specified reprehensible conduct.

5. **Criminal Law § 86— cross-examination as to other criminal charges — new trial**

    Whether a violation of the rule against impeachment by evidence of criminal charges as distinguished from convictions will constitute sufficient ground for a new trial depends upon the circumstances of a particular case.

6. **Criminal Law § 86— cross-examination of defendant — arrest for another crime — harmless error**

    In this armed robbery prosecution, the admission of evidence on cross-examination of defendant with reference to defendant's arrest for assault the day before the robbery was inconsequential and constitutes no ground for a new trial.

7. **Criminal Law §§ 102, 170— absence of defense witness — objectionable question by solicitor — harmless error**

    Where defendant testified that a certain defense witness was not in court and had not been subpoenaed because "he didn't want

State v. Gainey

to come to court," the solicitor's question, "He didn't want to go on the stand and perjure himself, did he?", while objectionable, could not have effected the outcome of the case and was not prejudicial error.

8. **Criminal Law § 86— cross-examination of defendant — other parole violations**

For the purpose of impeachment, it was competent for the solicitor to ask defendant if he had been guilty of other parole violations.

9. **Criminal Law §§ 99, 170— remark by trial court — harmless error**

Trial judge's erroneous comment, in passing upon a defense objection to the solicitor's cross-examination of defendant, that "the jury is the judge" *held* not prejudicial.

10. **Criminal Law § 86— cross-examination of defendant — number of prison sentences served**

The solicitor was properly allowed to cross-examine defendant as to the number of prison sentences defendant had served.

APPEAL by defendant from *Bickett, J.,* 3 November 1969 Schedule "B" Session of CUMBERLAND (belated appeal allowed 5 May 1971 by writ of certiorari from the Court of Appeals), transferred for initial appellate review by the Supreme Court under the general referral order of 31 July 1970, entered pursuant to G.S. 7A-31(b)(4) (1969).

Defendant was arrested upon a warrant which charged that on 1 February 1969 he feloniously took $145.00 from the person of Cleveland Graham by making a felonious assault upon him which put him "in bodily fear and danger of his life." On 18 February 1969 at a regular session of the District Court, Judge Joseph E. Dupree explained to defendant the nature of the charges against him and the statutory punishment therefor, his right to have counsel appointed to represent him if he was indigent, and his right to a preliminary hearing. Defendant stated to the court that he did not desire the appointment of counsel and signed a written waiver.

Defendant also waived preliminary hearing, and Judge Dupree bound him over to the Superior Court for action by the grand jury. At the 10 March 1969 Session defendant and Charles W. Robinson were indicted for feloniously taking $145.00 from Cleveland Graham by the use of a pistol whereby his life was endangered and threatened.

On 26 February 1969, eight days after he was bound over, Judge Bickett appointed Attorney Marion C. George, Jr., to

represent defendant. However, "for good cause shown," on 27 August 1969, he permitted Mr. George to withdraw and appointed Attorney J. A. Bouknight, Jr., in his stead. On 29 September 1969 "for good reasons, including Defendant Gainey's wishes that Movant withdraw and other reasons, the revelation of which would violate Defendant Gainey's privileges," Mr. Bouknight moved to withdraw. Judge Bickett allowed the motion and appointed Mr. J. William Anderson, defendant's present attorney, to represent him.

Upon the trial, which began 3 November 1969, the evidence for the State tended to show:

On 1 February 1969 Cleveland Graham, Hubert Bennett, and David Grice were members of the United States Army, stationed at Fort Bragg. Between 12:45 and 1:30 a.m. the three men left the Savoy Club in Fayetteville and got into the automobile belonging to Graham, which was parked off the edge of the street about a car's length from the entrance to the Savoy. The entrance was lighted and a street light was "in touching distance from the bumper of [the] car." There was "enough light there to read a newspaper."

Graham got in the driver's seat with Grice beside him; Bennett got in the back. As Graham was about to start the car two men approached. One of them, Frank Gainey, "snatched the door open," and pointed a pistol with a white handle at his face. He ordered Graham to get out, face the automobile, and put his hands on top of the car. Graham did as he was told. Gainey held the gun to the back of Graham's head while he removed his wallet, containing $145.00, from his pocket. The other man, who was Charles Wayman Robinson, jerked Bennett out of the car. Grice was already out. When Robinson discovered that neither Grice nor Bennett had any money, Gainey told Robinson to take the watch from Grice's arm. Gainey left Graham to take the watch himself.

While the two men were occupied with Grice, Bennett ran into the Savoy Club to get help. However, "he walked in and circled right back out . . . when the man inside wanted to charge two dollars for running in there." (Bennett knew that the Savoy ticket sellers were armed with pistols and inclined to suspect "gate-crashers.") As he ran down the street Bennett heard two shots fired and "figured they were probably shoot-

ing Graham." He finally met an M. P., who "couldn't go over in that area" but who called for some help. By that time Bennett "had shocked nerves and everything"; so he caught the bus back to Fort Bragg without ascertaining the fate of his companions.

After defendant and Robinson had obtained Grice's watch they returned to Graham, who had hidden his watch back of the front seat in the meantime. When they did not find his watch they beat him about the head, knocked him down into a mud puddle, and began to kick him. Grice came from around the rear of the car and told them to leave Graham alone; that they had already taken his money. When they turned their attention to Grice, Graham ran down the street. Being unable to find help or to get any response from any house, he retraced his steps. From two houses back he observed that the street was empty. He returned to the Savoy where he found David Grice requesting permission from one of the ticket sellers to call the police.

About 2:00 a.m. Police Officer DeVane met Graham and Grice at the Savoy. On the way to the police station DeVane stopped at the home of Robinson's grandmother, who gave him her family album of photographs. From this album Graham identified Robinson as one of the men who had robbed him, and he went to the police station to sign a warrant for him. From there the two officers, Graham, and Grice went looking for the two men; Graham rode with DeVane and Grice with Acker. As the police cars approached the home of Robinson's grandmother, Robinson and Gainey were getting out of an automobile. As soon as one of the officers turned the spotlight on the two, Graham immediately told DeVane that they were the men who had robbed him, and Grice said to Acker, "Stop the car." Acker approached and ordered the men not to move. Robinson stopped, but Gainey struck the officer on the head and ran. DeVane arrested Robinson. Acker pursued Gainey and arrested him. The two were then taken to the police station where they were placed in a room with three other Negro men who had been arrested and were being booked. When Grice entered the room he said to the police officers, "These are the two men that robbed us. This man here (Gainey) has my watch on."

In response to a call from the police about 5:00 a.m., Bennett went to the booking room of the police station where de-

fendant and Robinson were with "a lot of guys . . . public drunks and everything . . . all Negroes." Bennett pointed to Robinson and Gainey as the men who had staged the robbery.

At the time of the trial Grice had been transferred to Hawaii. Graham and Bennett testified, and both positively identified Gainey and Robinson as the men who had attacked them and robbed Graham and Grice. Graham could not remember what kind of clothing the two men were wearing. Bennett said they both had on trench coats. He thought Robinson was wearing a dark one and Gainey a light one, "a white or beige or something," but he was not sure.

The testimony of defendant Gainey, as a witness in his own behalf, tended to show: On the evening of 31 January 1969 he remained at his home with his wife, his brother Jesse, and Meng Harris from 8:00 p.m. until 2:00 or 2:30 a.m. on 1 February 1969, when he left with Wayman Robinson to go to the home of Robinson's mother. On the way they caught a ride with Willie Ray and were getting out of his car when they "got arrested." Defendant has never owned a light-colored trench coat or a white-handled automatic pistol. On 1 February 1969 he did own an eighteen-jewel, silver-colored wristwatch, which he had bought while he was in prison in Raleigh serving a sentence for an assault on a female. When the police approached and ordered him not to move he ran because he was on parole, and he was not supposed to be out after 12:00. He didn't rob Graham, Grice, and Bennett because he "didn't rob nobody." On cross-examination defendant said that he had been "convicted of nothing but assault cases." He could not say "right off" how many times, but one case involved shooting at a man with a .22 pistol, a revolver.

Defendant's brother, Jesse James Gainey, and his wife testified that defendant was with them on 1 February 1969 until sometime between 1:00 and 2:00 a.m., when he left to go to the home of Robinson's mother; that he owned a wristwatch; and had been paid that day by Thomasson Plywood. Defendant testified that the officers found $80.00 of his wages on him.

The jury's verdict was guilty of armed robbery as charged. From a sentence of 20-25 years, defendant appealed. The court entered an order permitting him to appeal at public expense and continuing Mr. Anderson as his attorney for that purpose.

Mr. Anderson failed to perfect the appeal in apt time. On 21 May 1970 Judge Edward B. Clark entered an order in which he found that defendant's counsel had not perfected his appeal in apt time; "that there was excusable neglect" for the failure; and that defendant was lawfully entitled to appeal and was an indigent. Judge Clark thereupon entered an order reappointing J. William Anderson as defendant's attorney for the purpose of preparing a petition for a writ of certiorari to the North Carolina Court of Appeals. Presumably this order was entered as a result of defendant's petition, filed in December 1969 with the judge presiding in the Superior Court of Cumberland County, that defendant himself be furnished the transcript of his trial and copies of the documents constituting the record proper. Approximately one year later, on 4 May 1971, the petition for certiorari was filed with the Court of Appeals, which allowed the petition on 5 May 1971. In due course the appeal was docketed in the Court of Appeals and transferred to us under the general referral order then in effect.

*Attorney General Robert Morgan and Staff Attorney Burley B. Mitchell, Jr., for the State.*

*J. William Anderson for defendant appellant.*

SHARP, Justice.

Defendant's case on appeal contains seven assignments of error, one of which he expressly abandons in his brief. His first two assignments relate to Judge Dupree's findings that, prior to defendant's waiver of counsel and preliminary hearing, he had explained to him the nature of the charges against him, the statutory punishment therefor, and his constitutional rights in connection therewith.

[1]  Defendant was bound over to the Superior Court upon a warrant charging him with common-law robbery, a crime punishable by imprisonment not exceeding ten years. G.S. 14-2 (1969). In the Superior Court he was tried upon an indictment charging robbery with firearms for which the punishment is not less than five nor more than thirty years. G.S. 14-87 (1969). Defendant argues that the crime for which he was tried was not the one which Judge Dupree had explained to him and, therefore, he could not have knowingly and understandingly

waived either counsel or a preliminary hearing. However, defendant does not project this argument further. He points to no prejudice whatever resulting to him from the absence of counsel at the time he waived preliminary hearing, and the record neither discloses nor suggests any. Nothing prejudicial to defendant is shown to have taken place at any time. He made no statements with reference to the charge against him until he testified in the Superior Court, where he was represented by counsel. No preliminary hearing was required and none was held.

[2]   Under our law a preliminary hearing is not an essential prerequisite to a bill of indictment. *Gasque v. State,* 271 N.C. 323, 156 S.E. 2d 740, *cert. den.* 390 U.S. 1030, 20 L.Ed. 2d 288, 88 S.Ct. 1423 (1968), and cases therein cited. However, since G.S. 7A-451 (effective 1 July 1969) declares a preliminary hearing to be "a critical stage of the action," it follows that an indigent defendant would be entitled to the appointment of counsel if such a hearing is held. *See Coleman v. Alabama,* 399 U.S. 1, 26 L.Ed. 2d 387, 90 S.Ct 1999 (1970). We hold that none of defendant's constitutional rights were violated during the proceedings in the District Court; that his waiver of counsel was valid; and that he sustained no prejudice either by reason of his waiver of counsel or preliminary hearing. *State v. Clark,* 272 N.C. 282, 158 S.E. 2d 705.

[3]   Defendant's third assignment of error is: "To the court's overruling of defendant's objection to questions by the solicitor concerning defendant's previous arrest. (R p 41)" As we have repeatedly pointed out, such an assignment does not comply with Rule 19 (3) of the Rules of Practice in the Supreme Court. 254 N.C. at 783, 798-800. *See Grimes v. Credit Company,* 271 N.C. 608, 157 S.E. 2d 213; *State v. Staten,* 271 N.C. 600, 607-608, 157 S.E. 2d 225, 231. Although the assignment of error does not itself specifically show the questions sought to be presented as required by the rule, we have reviewed the record and ascertained the question. On cross-examination, after defendant denied that he had seen Officer Acker "earlier that day" (31 January 1969), he testified without objection that Acker had arrested him on a Thursday night—presumably on 30 January 1969. The solicitor's next question was, "What did he arrest you for"? Defendant's objection was overruled, and he answered that he had been arrested for an assault upon a person whose name he did not know, just somebody he was "fighting with."

[4] It is no longer the rule in North Carolina that, for purposes of impeachment, a witness may be asked if he has been arrested or indicted for a specified offense. In *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174, this Court overruled *State v. Maslin,* 195 N.C. 537, 143 S.E. 3; *State v. Brown,* 266 N.C. 55, 145 S.E. 2d 297, and other cases which, permitted such questions for impeachment. Chief Justice Bobbitt, writing the opinion of the Court, said: "We now hold that, *for purposes of impeachment,* a witness, including the defendant in a criminal case, may *not* be cross-examined as to whether he has been *indicted* or is *under indictment* for a criminal offense other than that for which he is then on trial. . . . *A fortiori* we hold that, *for purposes of impeachment,* a witness, including the defendant in a criminal case, may *not* be cross-examined as to whether he has been *accused,* either informally or by affidavit on which a warrant is issued, of a criminal offense unrelated to the case on trial, nor cross-examined as to whether he has been *arrested for* such unrelated criminal offense." *Id.* at 672, 185 S.E. 2d at 180.

[4] The trial of this case occurred before the decision in *Williams.* Although no longer permissible, the solicitor's questions with reference to defendant's arrest were then competent. However, the decision in *Williams* did not change the rule that for purposes of impeachment a witness may be asked whether he has *committed* specific criminal acts or been guilty of specified reprehensible conduct. *State v. Hartsell,* 272 N.C. 710, 158 S.E. 2d 785; *State v. Bell,* 249 N.C. 379, 106 S.E. 2d 495; Stansbury, N. C. Evidence § 111 (2d Ed. 1963). Had the solicitor's question been whether defendant had engaged in an affray on Thursday night instead of "What were you arrested for?" it would have been permissible.

[5, 6] As the opinion in *Williams* pointed out, "Whether a violation of the rule [against impeachment by evidence of criminal *charges* as distinguished from convictions] will constitute sufficient ground for a new trial will depend upon the circumstances of a particular case." *Id.* at 674, 185 S.E. 2d at 181. Therefore, even under *Williams,* the admission of the evidence with reference to defendant's arrest was inconsequential and constitutes no ground for a new trial.

[7] Assignment of error No. 4 purports to raise the question whether the court erred "in overruling defendant appellant's

objections to questions by the solicitor concerning defendant's failure to have certain defense witnesses in court." This assignment likewise does not comply with our Rule 19(3). The record page reference to which the assignment refers shows defendant to have testified without objection that Willie Ray, the man who (he said) had given him and Robinson a ride to the home of Robinson's mother, was not in court. When the solicitor asked defendant if he had subpoenaed Ray as a witness, defendant answered that Ray "didn't want to come to court." The solicitor's next question was, "He didn't want to go on the stand and perjure himself, did he?" There was no objection to this question, which defendant answered by saying, "He didn't have no reason to tell no lie."

Defense counsel then objected "about where he [Ray] is and what he was going to say." The objection was overruled, and the solicitor dropped the subject. Defendant not only made no objection to the question which elicited this testimony, but there was no motion to strike it. However, such a motion would have been addressed to the discretion of the court. *State v. Herndon,* 223 N.C. 208, 25 S.E. 2d 611, *cert. denied* 320 U.S. 759, 88 L.Ed. 456, 64 S.Ct. 67 (1943). *See* 4 Strong, N. C. Index *Trial* § 15 (1961). The solicitor's question with reference to Ray's motives was objectionable. However, it is inconceivable that it affected the outcome of the case, and under all the circumstances, it cannot be held prejudicial error. *State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839; *State v. Hunt,* 223 N.C. 173, 25 S.E. 2d 598.

The foregoing comments with reference to assignment of error No. 4 are equally applicable to assignment No. 5. On direct examination defendant had explained his flight from Officer Acker at the time of his arrest by saying that he was on parole and was not supposed to be out after midnight. On cross-examination the solicitor asked him how many times he had broken the terms and conditions of his parole. There was no objection and defendant answered, "That is the first time that I can recall." Defense counsel then objected "to this line of questioning" on the ground that defendant "is not charged with a violation of probation, your Honor, and that is not the issue here." No motion to strike the answer was made. Judge Bickett did not understand counsel's statement. His reply to it was that he could not hear a word and that "the jury is the judge."

State v. Gainey

**[8, 9]** For the purpose of impeachment it was competent for the solicitor to ask defendant if he had been guilty of other parole violations and, had objection been timely made, it would have been properly overruled. Therefore, the judge's failure to evaluate this question and answer was immaterial. Indubitably, the competency and admissibility of evidence is for the court and not the jury. However, it is beyond belief that the judge's erroneous statement that "the jury is the judge," when considered in context, could have influenced the jury's verdict one way or the other. Assignment of error No. 5 is overruled.

After defendant had testified on cross-examination that he had bought the watch, which Grice identified as his, from another inmate while he was in prison in Raleigh, the solicitor asked this question: "You've had a lot of experience in prison, haven't you?" Defendant's objection was overruled, and he answered that he had "been convicted of nothing but assault cases . . . on one charge they had me for attempt to kill; I was shooting at one."

**[10]** The solicitor's question was inexactly phrased, but in effect it was, as defendant understood, an inquiry as to the number of prison sentences defendant had served. As such, it was proper cross-examination, and the court's ruling was not erroneous. Assignment of error No. 6 is overruled.

In his brief, defendant properly abandoned his seventh and final assignment of error. It was based upon his only exception to the judge's charge, and it pointed to no error.

We have carefully examined the entire record in this case. It discloses that defendant has had a fair trial, free from prejudicial error, and it leaves no reasonable doubt of his guilt. While defendant's appeal appears to have been unnecessarily delayed, since his sentence must be affirmed, no prejudice has resulted to him from the delay. He has been in custody since 4 November 1969 and, all the while, he has been serving the sentence from which he appealed. G.S. 15-186.1 (1971).

In the trial below we find

No error.