STATE OF NORTH CAROLINA v. LINDSEY KEESTER CARVER

No. 103

(Filed 26 November 1974)

1. **Criminal Law § 88 — failure to subpoena witnesses — cross-examination proper**

    The trial court did not err in allowing the solicitor to cross-examine defendant concerning his failure to subpoena witnesses who were on the premises when the shooting occurred or witnesses from the crowd which gathered after the shooting where such evidence tended to impeach defendant's testimony.

2. **Criminal Law § 111 — conflicting instructions on material point — new trial**

    When there are conflicting instructions upon a material point, there must be a new trial since the jury is not supposed to be able to distinguish between a correct and an incorrect charge.

3. **Homicide § 27 — reduction of crime to manslaughter — instructions erroneous**

    Defendant in this first degree murder case is entitled to a new trial where the trial court's original instruction was confusing and where the court, upon a request by the jury for clarification of the possible verdicts, instructed that in order to reduce the crime to manslaughter, the defendant must prove to the jury's satisfaction that he acted in self-defense.

ON *certiorari* to review decision of the Court of Appeals reported in 22 N.C. App. 674, 207 S.E. 2d 299, finding no error in the trial of defendant before *McLelland, J.,* 22 October 1973 Session of PERSON Superior Court.

Defendant was tried upon a bill of indictment charging him with the first-degree murder of Leon Clay. Through his counsel he entered a plea of not guilty.

---

State v. Carver

---

The State offered evidence tending to show that on 17 September 1972 Leon Clay, the deceased, engaged in a fist fight with defendant's friend, Sam Little, in the yard of Ray Paylor's Entertainment Center. Clay left the scene and returned with a shotgun which he held on Sam Little. Thereupon, defendant obtained a pistol, which he pointed at the head of deceased, and obtained the shotgun from deceased. Defendant then took two or three steps backward and fired one shot, striking Clay in the head and fatally injuring him.

Defendant's evidence, in brief summary, tended to show that after obtaining the shotgun, the deceased Leon Clay threatened the lives of defendant, his half brother Larry Ramsey, and Sam Little. Defendant then obtained a pistol, pointed it at deceased, and wrestled the shotgun from him. Defendant then saw the deceased in the act of taking a pistol from his clothing, and at that point shot the deceased. Defendant stated: "I had no doubt at the time that I shot that he [deceased] would have shot me." Defendant also offered evidence to the effect that the deceased, Leon Clay, had a reputation for "being a man of violence."

The jury returned a verdict of guilty of voluntary manslaughter, and the court imposed judgment sentencing defendant to imprisonment for a term of not less than twelve years nor more than fifteen years.

Defendant appealed to the North Carolina Court of Appeals, and that court found no error in the trial below. We allowed defendant's petition for writ of certiorari to the North Carolina Court of Appeals on 24 September 1974.

*Attorney General James H. Carson, Jr., by Assistant Attorney General George W. Boylan, for the State.*

*Ramsey, Jackson, Hubbard & Galloway, by Mark Galloway, for defendant appellant.*

BRANCH, Justice.

[1] Defendant contends that the trial judge erred by allowing the solicitor to cross-examine defendant concerning his failure to subpoena certain witnesses.

In this connection, the record discloses the following exchange between the solicitor and defendant:

"Q. Did you ever make any effort to find any witnesses who could verify your side of the case other than these two gentlemen you have brought into court?

OBJECTION OVERRULED.

EXCEPTION.

"A. Yes, sir. I contacted Roy Paylor and William Pointer, the man that told Leon [the deceased] to go home..

"Q. Did you subpoena them to come to Court today?

OBJECTION.

OBJECTION OVERRULED.

EXCEPTION.

"A. No, I had not. They did not testify for me at the preliminary hearing."

The Court of Appeals held that the scope of cross-examination is largely within the trial judge's discretion and that "there was no manifest abuse of such discretion in this case which could be considered to be prejudicial."

The scope of cross-examination rests largely in the trial judge's discretion, and his ruling thereon will not be held as reversible error unless it is shown that the verdict was improperly influenced thereby. *State v. McPherson*, 276 N.C. 482, 172 S.E. 2d 50; *State v. Ross*, 275 N.C. 550, 169 S.E. 2d 875, cert. denied, 397 U.S. 1050, 90 S.Ct. 1387, 25 L.Ed. 2d 665; *State v. Edwards*, 228 N.C. 153, 44 S.E. 2d 725; and *State v. Beal*, 199 N.C. 278, 154 S.E. 604.

Defendant relies on the case of *State v. Gainey*, 280 N.C. 366, 185 S.E. 2d 874, to support his contention that the above-quoted testimony was erroneously admitted to his prejudice. In *Gainey*, the defendant had testified without objection that one Willie Ray could have supported his defense of alibi but was not in court. When the solicitor asked defendant if he had subpoenaed Ray, the defendant answered that Ray "didn't want to come to court." The solicitor then asked, "He didn't want to go on the stand and prejure himself, did he?" There was no objection to the latter question, which defendant answered by saying, "He didn't have no reason to tell no lie." There Justice Sharp, speaking for the Court, stated: "The solicitor's question

*with reference to Ray's motives* was objectionable. However, it is inconceivable that it affected the outcome of the case, and under all the circumstances, it cannot be held prejudicial error. [Citations omitted.]" (Emphasis supplied.)

Here, there was testimony that Roy Paylor and William Pointer were on the premises when the shooting occurred. There was also testimony by defendant that, after the shooting, a "crowd" approached him and Clay's body. Defendant did not subpoena a person from the "crowd" and in particular failed to subpoena Roy Paylor and William Pointer, who were shown to have been on the premises. The only witnesses to the shooting offered by defendant were his half brother, Larry Ramsey; Samuel David Little, defendant's friend, who apparently helped to precipitate the altercation; and defendant himself.

Under these circumstances we think that this evidence was correctly admitted as tending to impeach defendant's testimony. Even if we were to hold the admission of this evidence to be erroneous, we do not believe that its admission would have affected the outcome of the trial.

Defendant's Assignment of Error Number 17, directed to the court's charge, presents a more serious question. In his final mandate to the jury in the original charge, the trial judge instructed the jury:

> "If you do not find the defendant guilty of second degree murder, you must consider whether or not he is guilty of voluntary manslaughter. If you find from the evidence beyond a reasonable doubt that on or about September 17th, 1972, Lindsey Keester Carver intentionally shot Leon Clay with a pistol, a deadly weapon, thereby proximately causing Leon Clay's death, but are satisfied that the defendant killed without malice in the heat of sudden passion, nothing else appearing, or being the agressor without murderous intent in bringing on the confrontation with Leon Clay, or using excessive force in exercising a right of self-defense, it would be your duty to return a verdict of guilty of voluntary manslaughter.

> EXCEPTIONS 18 & 20."

After beginning its deliberations, the jury returned to the courtroom and requested that the court "clarify to us or give to us again the verdicts, one of which we are supposed to bring

back." The court then stated the possible verdicts and inquired whether this statement answered the question posed. The foreman responded: "No sir, it isn't quite clear in our minds yet the differences of the charges." Thereupon, after briefly and correctly charging as to first-degree murder and second-degree murder, the court stated:

"In order to reduce the crime to manslaughter, the defendant must prove, not beyond a reasonable doubt, but simply to your satisfaction *that he acted in self-defense.*

EXCEPTION No. 22." (Emphasis supplied.)

The court thereafter correctly charged both on self-defense and as to how malice might be negated so as to reduce the homicide from second-degree murder to manslaughter.

The Court of Appeals held that while the charge above-quoted was obvious error, it amounted to a mere *lapsus linguae* and was harmless error beyond a reasonable doubt. We agree with the decision of the Court of Appeals that the challenged portion of the charge was obvious error, but we are unable to concur in its holding that the error was not prejudicial.

[2] It is well recognized in this jurisdiction that when there are conflicting instructions upon a material point, there must be a new trial since the jury is not supposed to be able to distinguish between a correct and incorrect charge. *State v. Jennings,* 276 N.C. 157, 171 S.E. 2d 447; *State v. Fowler,* 250 N.C. 595, 108 S.E. 2d 892; *State v. Ellerbe,* 223 N.C. 770, 28 S.E. 2d 519; *State v. Floyd,* 220 N.C. 530, 17 S.E. 2d 658; *State v. Johnson,* 184 N.C. 637, 113 S.E. 617.

In *State v Ellerbe, supra,* we find the following pertinent statement:

"... An erroneous instruction upon a material aspect of the case is not cured by the fact that in other portions of the charge the law is correctly stated. This is especially applicable in the instant case, because the jury was instructed that, in order for the defendant to have the benefit of the principle of law, that is, of self-defense, he must show certain things, some of which he was not required to show under the facts and circumstances disclosed on this record, in order to have the jury consider his evidence on the plea of self-defense. It is impossible to determine

on which of the instructions the jury acted. [Citations omitted.]"

In instant case, defendant did not controvert the fact that he intentionally shot Leon Clay with a deadly weapon, thereby proximately causing his death. He relied on self-defense for an acquittal. Thus, the challenged portion of the charge is material since it, in effect, instructs the jurors to return a verdict of voluntary manslaughter if they find that defendant did act in self-defense.

[3]   It is apparent that the able trial judge had full knowledge of the pertinent principles of law; however, in the original charge, through *lapsus linguae* or error in transcription of the record, we find language that might well have confused the jury. The questions asked by the foreman when the jury returned dispel any doubt that confusion existed among the jurors as to the elements of the possible verdicts submitted to them. This confusion must have been magnified by the inadvertent, erroneous instruction that in order to reduce the crime to manslaughter, the defendant must prove to the jury's satisfaction that he acted in self-defense. Further, we note that although the trial judge, in another part of the charge, instructed correctly, he did not retract the erroneous instruction and substitute the correct one in its place.

Since we are unable to determine whether the jury acted on the correct instructions or on the incorrect instructions, we hold that there was prejudicial error in the court's charge.

We do not deem it necessary to discuss defendant's other assignments of error since the questions there presented may not arise at another trial.

The decision of the Court of Appeals is reversed, and this cause is remanded to that Court with direction that it be remanded to the Superior Court of Person County for a new trial.

Reversed and remanded.