STATE OF NORTH CAROLINA v. ROBERT LEE THOMPSON

No. 61

(Filed 15 December 1977)

1. **Criminal Law § 102.7— jury argument—characterization of defense witnesses**

    The district attorney's jury argument characterizing defendant's two female witnesses as "a couple of hot numbers" and referring to one of those witnesses as a "cohort" of the other could legitimately be inferred from the evidence and was not improper. Furthermore, any possible prejudice from such argument was cured when the court sustained defendant's objections thereto and gave the jury curative instructions.

2. **Criminal Law § 102.6— jury argument—absence of other alibi witnesses**

    It was proper for the district attorney to ask questions and argue to the jury about the whereabouts of other potential witnesses who did not testify but who could have corroborated defendant's alibi if, in fact, his alibi evidence was accurate and truthful.

3. **Criminal Law § 102.7— jury argument—absence of motive by victim to accuse falsely**

    In this rape prosecution, the district attorney's jury argument that the prosecuting witness lacked "the guts, the imagination, the intelligence and the reason to come into a court of law and just pluck some innocent fellow out of the public and send him off" was not improper.

4. **Criminal Law § 102.9— jury argument—defendant's interest in testifying falsely**

    The district attorney's jury argument that defendant's testimony should be carefully scrutinized because a defendant "has a deep and abiding, vested

interest in telling you any sort of transparent fabrication his imagination can dream up and that he thinks you are gullible enough and naive enough to buy" was merely an assertion that a criminal defendant has an interest in testifying falsely if he believes the jury will give credence to his false testimony and was not improper.

5. **Criminal Law § 102.6— jury argument—blame for freeing criminals—curative instructions**

Any possible prejudice to defendant because of the district attorney's jury argument that juries must accept the blame if criminals are turned loose and set back on society was overcome when the trial court on its own motion instructed the district attorney that the defendant was not a criminal and was not to be referred to in such terms and instructed the jury not to consider any such reference to the defendant.

Justice EXUM concurring.

DEFENDANT appeals from judgment of *Preston, J.,* 28 February 1977 Session, ROBESON Superior Court.

Defendant was tried upon a bill of indictment charging him with the first degree rape of Naomi Hardin on 8 February 1975.

The State's evidence tends to show that on 8 February 1975 at about 12:45 a.m. Naomi Hardin and her estranged husband were sitting in a car parked in a secluded area known locally as Lover's Lane. The doors of the car were jerked open by two black males, both wearing masks and one carrying a sawed-off shotgun. Mr. and Mrs. Hardin were ordered from the car. Mr. Hardin attempted to flee but was caught and knocked unconscious by a blow from one assailant's shotgun. Mrs. Hardin attempted to flee, was caught and forced to walk through a wooded area to the assailants' car. There she was forced into a light colored 1966 Plymouth Fury with a loud muffler. She was blindfolded but her blindfold did not completely obscure her vision.

The assailants drove the car several miles down various roads and Mrs. Hardin was able to discern the route they followed. She was familiar with the roads followed because she sold insurance and had clients living in that area. During this journey her captors removed their masks and Mrs. Hardin was able to observe their features. She was also able to observe that the car had a black interior, a three-speed standard gear shift mounted on the steering column and a red oil or alternator light which blinked on and off continually.

The car stopped in front of a white frame house. Mrs. Hardin was forced to have sexual relations with one of her assailants in the front seat of the parked car. She was then escorted into the house where she was forced to have relations with the other assailant. She had slipped her blindfold up over her eyes and had an unobstructed view of this latter assailant, whom she later identified as defendant. She was then returned to the car which was driven toward Lumberton. During this journey she was raped again. Finally the rapists stopped the car in a wooded area and Mrs. Hardin was permitted to leave.

Mrs. Hardin subsequently identified a pale yellow 1966 Plymouth Fury belonging to defendant as similar to the car in which she had been abducted. Defendant's car had a black interior, a three-speed standard transmission mounted on the steering column, a loud muffler, and a red oil light which blinked on and off continually when the car was in motion. Mrs. Hardin also traced the route her assailants followed and directed officers to a white frame house which she identified as the place where defendant raped her. Defendant had been given permission to occupy this house in exchange for his promise to work for the man who farmed the property on which it was located. Mrs. Hardin identified defendant as one of her assailants and selected him from a lineup of nine men. On the first attempt to identify her assailants from this lineup, she selected another man but, after calming herself, she returned to the lineup and identified defendant and Willie Davis McEachern as her assailants. McEachern's conviction has heretofore been upheld. See 290 N.C. 431, 226 S.E. 2d 487.

Defendant's testimony tended to show that at the time Mrs. Hardin was raped he was talking with two girls at a local gathering place. Defendant stated that he had loaned his car to Willie McEachern, identified by Mrs. Hardin as the other man who had raped her, and that he talked to the two girls for one and one-half to two hours while waiting for McEachern to return the car. His testimony concerning his whereabouts at the time of the rape was corroborated by two young women, Billie Ann Leake and Geraldine McNatt.

Defendant was convicted of first degree rape and sentenced to life imprisonment. He appealed to the Supreme Court assigning errors noted in the opinion.

*Rufus L. Edmisten, Attorney General, by Elizabeth C. Bunting, Assistant Attorney General, for the state of North Carolina.*

*Arthur L. Lane and Paul B. Eaglin, attorneys for defendant appellant.*

HUSKINS, Justice.

Defendant assigns as error various instances of alleged misconduct on the part of the district attorney, contending his actions and statements in questioning witnesses, addressing the court, and in his argument to the jury deprived defendant of a fair and impartial trial guaranteed by both federal and state constitutions. This assignment requires an examination of the challenged acts and the context in which they occurred.

Defendant testified that he was at Mauney's Supermarket and its environs from midnight until 2 a.m. on the night of 8 February 1975, talking to and riding around with Billie Ann Leake and Geraldine McNatt. This is the period during which Mrs. Hardin was raped. Defendant therefore contends he could not have been the rapist. His alibi was largely supported by the testimony of the two girls. During cross-examination of Geraldine McNatt, the district attorney attempted to demonstrate that she was unsure of the date defendant was in her presence. When she said she had not checked it out on the calendar, he asked: "So you don't really know which weekend you are talking about in reference to the 7th and 8th of February 1975; do you, girl?" Defense counsel objected "to this 'girl' bit." The objection was sustained, motion to strike allowed, and the district attorney then withdrew the question.

[1] During the course of his jury argument the district attorney referred to Geraldine McNatt and Billie Ann Leake as "a couple of hot numbers." Defendant's objection to this characterization was sustained, his motion to strike was allowed, and the jury was instructed to disregard the expression. Shortly thereafter the district attorney referred to one of those witnesses as a "cohort or friend" of the other. Defendant's objection to the word "cohort" was sustained.

The record reveals that on the night of 7-8 February 1975 when Mrs. Hardin was raped, Geraldine McNatt was twenty years of age and Billie Ann Leake was fifteen years of age. Ac-

cording to the testimony of these girls, Miss Leake had been out on the town that night until 4:30 a.m., frequenting nightspots and drinking beer. Miss McNatt had visited various local hangouts in the early hours of the morning. According to their testimony, they met defendant by chance at Mauney's, a local hangout, where they "walked over and started talking to him. . . . We talked about how to get high on anything—drugs, liquor, beer or anything." After talking with him for one and one-half hours they joined him in his car and went to the Patio Club where they remained until 2 a.m.—"when we got there the place was jumping." While there Miss McNatt testified she drank wine and beer, while Miss Leake confined her imbibing to beer alone. Miss Leake testified she stayed at the Patio about an hour and a half and got home about 4 or 4:30 a.m. Miss McNatt said she left the Patio Club about 2 a.m. with her cousins.

In our view the district attorney's characterizations of Geraldine McNatt and Billie Ann Leake may legitimately be inferred from the evidence. *State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283 (1975); *State v. Wortham*, 287 N.C. 541, 215 S.E. 2d 131 (1975). In any event, the defendant's objections were sustained and the curative instructions of the judge sufficed to remove any possible prejudice that might have been engendered by the challenged remarks. *See State v. Britt, supra; State v. Miller*, 288 N.C. 582, 220 S.E. 2d 326 (1975).

[2] Defendant next objects to the district attorney's questions and jury argument concerning the whereabouts of other potential witnesses who did not testify but who could have corroborated defendant's alibi if, in fact, his alibi evidence was accurate and truthful. Defendant's challenge cannot be sustained. "It is the duty of the prosecuting attorney to present the State's case with earnestness and vigor and use every legitimate means to bring about a just conviction. . . . Counsel for both sides are entitled to argue to the jury the law and the facts in evidence and all reasonable inferences to be drawn therefrom." *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975). It is permissible for the prosecutor to draw the jury's attention to the failure of the defendant to produce exculpatory testimony from witnesses available to defendant. *State v. Tilley*, 292 N.C. 132, 232 S.E. 2d 433 (1977); *State v. Carver*, 286 N.C. 179, 209 S.E. 2d 785 (1974). *Compare*

*State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976); *State v. Gainey*, 280 N.C. 366, 185 S.E. 2d 874 (1972).

[3]  During the course of his jury argument the district attorney argued the truthfulness of the prosecuting witness by contending she lacked "the guts, the imagination, the intelligence and the reason to come into a court of law and just pluck some innocent fellow out of the public and send him off." An objection to this portion of his argument was sustained and the jury instructed not to consider it. In our view this argument was not improper. Hence further discussion is unnecessary.

[4]  During the course of his jury argument the district attorney urged the jury to scrutinize defendant's testimony carefully in the following fashion:

> "The law says—and I think possibly the Judge may charge you something to this effect: That when a defendant walks around and places his hand on this Holy Bible and swears to tell you the truth, you, the jury, is to do something. What is it? You are to what? You are to scrutinize and you are to examine and you are to look at closely every single thing that he has to say. You know why? Because he has a deep and abiding, vested interest in telling you any sort of transparent fabrication his imagination can dream up and that he thinks you are—

> MR. LANE [defense attorney]: Objection.

> MR. BRITT: — gullible enough and naive enough to buy.

> MR. LANE: Objection.

> COURT: Overruled."

Defendant assigns the quoted argument and the ruling of the court as error.

This Court has held that it is improper for an attorney to express his personal opinion concerning the veracity of a witness. *State v. Miller*, 271 N.C. 646, 157 S.E. 2d 335 (1967). We have also held that it is proper for a district attorney to argue to the jury: "I submit to you, that [defense witnesses] have lied to you." *State v. Noell*, 284 N.C. 670, 202 S.E. 2d 750 (1974). The argument of the district attorney quoted above, when shorn of its colorful verbiage, is an assertion that a criminal defendant has an interest in

testifying falsely if he believes the jury will give credence to his false testimony.

We have repeatedly held that it is proper for the trial judge to charge the jury that it should carefully scrutinize the testimony of a criminal defendant because he is interested in the outcome of the case. *State v. Griffin*, 280 N.C. 142, 185 S.E. 2d 149 (1971); *State v. Choplin*, 268 N.C. 461, 150 S.E. 2d 851 (1966); *State v. McKinnon*, 223 N.C. 160, 25 S.E. 2d 606 (1943). It is likewise proper for attorneys to so argue. As a general rule the argument of counsel must be left largely to the control and discretion of the presiding judge. *See, e.g., State v. Taylor*, 289 N.C. 223, 221 S.E. 2d 359 (1976), and cases there cited. "Ordinarily we do not review the exercise of the trial judge's discretion in controlling jury arguments unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations." *State v. Taylor, supra*, at 227, 221 S.E. 2d at 362.

In light of the foregoing principles, we hold that the quoted portion of the district attorney's argument is within permissible bounds.

[5] Defendant objects to another portion of the district attorney's argument in which he contends that juries must accept the blame if criminals are turned loose and set back on society. The trial court intervened immediately and on its own motion instructed the district attorney that the defendant was not a criminal, was not to be referred to in such terms, and that the jurors should not consider any such reference to the defendant. We hold that the trial judge's curative instructions were adequate to overcome any possible prejudice conceivably caused by this particular line of argument.

Defendant finally argues that the cumulative effect of the foregoing actions on the part of the district attorney coupled with other instances of alleged misconduct—"screaming" questions at defense witnesses, continually interrupting the defense attorney in his attempt to address the court, mocking the defense attorney, arguing with the trial judge and making flippant responses to his rulings—served to create a biased atmosphere in which the defendant could not receive a fair trial. We have examined the record and the cases cited by defendant. The record does not reveal such prosecutorial misconduct nor such im-

proprieties as those involved in *State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283 (1975), or *State v. Smith*, 279 N.C. 163, 181 S.E. 2d 458 (1971). Nor does the record reveal an attempt to argue matters not legitimately arising on the evidence. *Compare State v. Roach*, 248 N.C. 63, 102 S.E. 2d 413 (1958). Moreover, no violation of G.S. 8-57 or G.S. 8-54 appears, as in *State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976), and *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975).

While the courtroom conduct of District Attorney Britt in many cases reflects a callous indifference to decisions of this Court, see in particular *State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283 (1975), and *State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976), a fact we note in passing, we find in this case no impropriety of sufficient moment to warrant a new trial. The verdict and judgment must therefore be upheld.

No error.

Justice EXUM concurring.

I write to disassociate myself from what is at least an intimation in the majority opinion that the conduct of the district attorney complained of on appeal was overall not improper but merely another example of order-of-the-day, colorfully zealous advocacy. I cannot discern from the opinion itself whether the majority's view is that the district attorney's conduct, while improper, was not sufficiently prejudicial to warrant a new trial or whether it is that his conduct was not improper. In my view the district attorney's conduct goes beyond that which is permitted to zealous advocacy.

The North Carolina Code of Professional Responsibility, Disciplinary Rule 7-106(c)(2), 283 N.C. 783, 837 (1973), provides:

"In appearing in his professional capacity before a tribunal, a lawyer shall not . . . ask any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person."

The American Bar Association's Standards Relating to the Administration of Criminal Justice, The Prosecution Function, § 5.7(a), Compilation, p. 97, provides:

"The interrogation of all witnesses should be conducted fairly, objectively and with due regard for the dignity . . . of the witness, and without seeking to intimidate or humiliate the witness unnecessarily. Proper cross-examination can be conducted without violating rules of decorum."

The district attorney's cross-examination of the witness Geraldine McNatt and his reference to her and the witness Billie Ann Leake as "hot numbers" were unnecessary attempts to degrade, intimidate and humiliate these witnesses contrary to the ethical considerations set out above.

This Court said in *State v. Miller*, 271 N.C. 646, 657, 157 S.E. 2d 335, 344 (1967): "Defendants in criminal prosecutions should be convicted upon the evidence in the case, and not upon prejudice created by abuse administered by the solicitor in his argument." The North Carolina Code of Professional Responsibility, *supra*, provides: "Haranguing and offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system." Ethical Consideration 7-37, 283 N.C. at 834. The district attorney's argument to the jury was actually that *every* defendant "has a deep and abiding, vested interest in telling you any sort of transparent fabrication his imagination can dream up and that he thinks you are gullible enough and naive to buy." It constituted unwarranted abuse and haranguing and offensive tactic which violates the principles of *State v. Miller, supra*, and Ethical Consideration 7-37 of the Code of Professional Responsibility, *supra*. The argument is, furthermore, legally incorrect. It is proper, of course, to argue that a defendant has an interest in the outcome of the case which might *tempt him to lie* if he is in fact guilty, and that his testimony should therefore be scrutinized carefully. I know of no rule to the effect that *every* defendant has an interest in testifying falsely. To permit such an argument is, in effect, to strike a severe blow at the presumption of innocence to which all defendants are entitled. The argument, in effect, says that criminal defendants are all guilty and if they testify to the contrary in their own behalf they are simply lying. The trial judge committed error in not sustaining defendant's objection to this argument.

The same kind of error was committed when the district attorney referred, at least by implication, to the defendant as a

criminal. The trial judge, however, intervened and instructed the jury to disregard this argument.

Because in this case the trial judge properly intervened, sustained most of defendant's objections to these improper prosecutorial tactics and instructed the jury to disregard them; and because I believe the result in this case would have been the same even if the trial court had sustained the objection to the district attorney's improper argument on the one occasion when he erroneously overruled it, I am unwilling to vote that defendant is entitled to a new trial. Therefore I concur in the result reached by the majority.