LEVINSON, Judge.
Defendant appeals from convictions of two counts of robbery with a dangerous weapon. For the reasons that follow, we conclude defendant had a fair trial, free of reversible error.
On 7 April 2003, the Guilford County grand jury indicted defendant on two counts of robbery with a dangerous weapon. At trial beginning on 4 June 2003, the State presented evidence tending to show the following: On 29 January 2003, Marshall Green was dispatched in his taxi to 812 South Pearson Street at approximately 11:30 p.m. Green and a friend, Willie Pleasant, Jr., picked up two men later identified as defendant and Charles McLain at that location. After Green had driven halfway to the men'sdestination, they changed their minds and redirected Green to Apple Ridge Apartments. While in route, McLain asked Green if he had change for a $20.00 bill. Upon arriving at Apple Ridge Apartments, Green informed the men that their fare was $7.40. McLain put a gun to Green's head and demanded his money. When Pleasant asked if he had to surrender his money, defendant said "[y]eah" and "[g]ive it here." Pleasant gave defendant two or three dollars. McLain took approximately $80.00 from Green.
Defendant exited the rear passenger door of the taxi and waited. Because the left rear door was broken, McLain also exited through the right rear door. As McLain was doing so, Green grabbed a gun from under his left thigh and shot McLain. While McLain was running away, Green informed his dispatcher that he had been robbed and asked for help.
Officer Gregg Martin responded to the call at 12:07 a.m. While he was questioning Green and Pleasant, Officer Martin and Officer Greg Gardner heard a call about two suspicious suspects standing on a front porch in the same apartment complex. The officers investigated and took defendant and McLain into custody.
Defendant testified he initially denied even being in the taxi because he "didn't want to get blamed for a charge [he] didn't do." After he calmed down, he told police that he and McLain had visited some girls until approximately 11:30 p.m. that evening. They called a taxi and ultimately headed for defendant's home. Because they had no money, they planned to "hop the cab" or jump out and run without paying. They never discussed a robbery, and defendanthad never seen McLain with a gun. McLain at one point did ask if Mr. Green had change for a $20.00 bill. As the taxi stopped and defendant prepared to run, McLain pulled out a gun and demanded money. Defendant said he knew his life was not in danger and that McLain was not going to rob him. Defendant got out of the taxi and ran at that time. After hearing the gunshot and McLain's statement that he had been shot, defendant returned to assist McLain. He was waiting for his mother to take them to the hospital when officers took them into custody.
During the charge conference, the State requested a jury instruction on admissions. Defendant objected, but the trial court overruled the objection. During the State's closing argument, the following exchange occurred:
[STATE]: Of all the witnesses who testified, . . . , who's got an interest in the outcome of the trial?
[DEFENSE]: Objection, Your Honor.
THE COURT: Overruled.
[DEFENSE]: The State's argument is based on the fact that he's charged with a crime. That can't be considered against him.
THE COURT: Okay. Overruled.
[STATE]: That man right there is the only one who's got an interest in the outcome of this trial.
Well, why would he do this? Why would he tell you a lie under oath at this hearing? The reason, of course, is, he's trying to avoid the consequence[s] of his actions back on January the 30th. He's trying to avoid those consequences.
In its jury instructions, the trial court gave the admissionsinstruction to which defendant had earlier objected.
There is evidence which tends to show that the defendant has admitted a fact relating to the crime charged in this case. If you find that the defendant made that admission, then you should consider all of the circumstances under which it was made in determining whether it was a truthful admission and the weight you will give to it.
After deliberating, the jury found defendant to be guilty of both counts of robbery with a dangerous weapons on 5 June 2003. The trial court consolidated the convictions for judgment and sentenced defendant to a term of 64 to 86 months imprisonment. From the trial court's judgment, defendant appeals.
Defendant first contends the trial court erred by overruling his objection to giving the pattern jury instruction on admissions to the jury. We disagree.
Defendant argues there was insufficient evidence of any admission by him "that he did anything to facilitate, encourage, or support armed robbery." However, an admission need not necessarily be an admission of a specific element of the charged offense. "An admission is a statement of pertinent facts which, in light of other evidence, is incriminating." State v. Trexler, 316 N.C. 528, 531, 342 S.E.2d 878, 879-80 (1986) (emphasis added). Where the defendant admits to such facts, this Court has upheld an instruction on admission which "made no specific mention of any particular element of the offense charged or that defendant had admitted robbing [the victim] with a dangerous weapon - only that the evidence tended to show an admission by defendant of 'one or more facts relating to the crime charged[.]'" State v. Borders,___ N.C. App. ___, ___, 594 S.E.2d 813, 815-816 (2004). As in Borders, the pattern instruction which the trial court gave to the jury made no specific mention of any particular element of the offense charged, but instead merely stated that the evidence tended to show an admission by defendant of "a fact relating to the crime charged in this case." N.C.P.I. _ Crim. 104.60 (1970). In the instant case, defendant admitted he: spent the evening with McLain; accompanied McLain in the taxi; planned to cheat the taxi driver by "hopping the cab" without paying the fare; was unafraid as he watched McLain rob Mr. Green; assisted McLain after he was shot and; lied to the police when first questioned about the robbery. These are facts "which, in light of other evidence, [are] incriminating." Trexler, 316 N.C. at 531, 342 S.E.2d at 879-80. Because the requested instruction was correctly stated and was supported by the evidence, the trial court did not err by instructing the jury on admissions. This assignment of error is overruled.
In his remaining argument, defendant contends the trial court erred by overruling his objection to part of the State's jury argument. He asserts the State's argument was improper because it was based upon the fact that he was charged with a crime. We disagree.
Our Supreme Court has "repeatedly held that it is proper for the trial judge to charge the jury that it should carefully scrutinize the testimony of a criminal defendant because he is interested in the outcome of the case. It is likewise proper forattorneys to so argue." State v. Thompson, 293 N.C. 713, 719, 239 S.E.2d 465, 469 (1977) (citations omitted). Nor did our Supreme Court find an abuse of discretion by the trial judge in permitting a district attorney's "assertion that a criminal defendant has an interest in testifying falsely if he believes the jury will give credence to his false testimony." Id. at 718-19, 239 S.E.2d at 469. Here the State argued "[t]hat man right there is the only one who's got an interest in the outcome of this trial. . . . The reason, of course, is, he's trying to avoid the consequence[s] of his actions back on January the 30th." In light of the aforementioned decision by our Supreme Court, we hold the trial court did not abuse its discretion by overruling defendant's objection to the State's closing argument.
Defendant failed to set out his remaining assignments of error in his brief. Because he has neither cited any authority nor stated any reason or argument in support of those assignments of error, they are deemed abandoned. N.C.R. App. P. 28(b)(6).
No error.
Judges TIMMONS-GOODSON and CALABRIA concur.
Report per Rule 30(e).