STATE OF NORTH CAROLINA v. SEARS WILLIAM SAULS

No. 54

(Filed 7 December 1976)

1. Criminal Law § 10— accessory before the fact — elements

　　The elements necessary to be proved under G.S. 14-5 in order to sustain a conviction for accessory before the fact are: (a) that defendant counseled, procured or commanded the principal to commit the offense; (b) that defendant was not present when the principal committed the offense; and (c) that the principal committed the offense.

2. Forgery § 2— accessory before the fact to forgery — sufficiency of evidence

　　Evidence was sufficient to withstand a motion for nonsuit on defendant's charges of accessory before the fact to forgery and to the uttering of forged instruments where it tended to show that two men went to defendant and told him they needed to get N. C. driver's licenses in fictitious names in order to cash stolen checks; defendant gave them directions to the license bureau and instructed them that, in order to get licenses, they would be required to take a written test and show identification; defendant loaned the men a car to drive to the license bureau; the men obtained the licenses and forged and cashed checks using the licenses; defendant personally received $2000

State v. Sauls

in cash from the men in return for the checks which were forged and cashed; one of the men stated to police that a third man provided fictitious identification cards and the stolen blank checks for $3000 "plus taking care of [defendant] with some of the money from the cashing of the blank checks in N. C."; when one of the men relayed his worry to defendant that a patrolman had taken down the license plate number of their car while at the license bureau, defendant told him "not to worry about anything, that if anybody came by, he'd cover up for [him]"; and some days later, defendant called one of the men to inform him that the police knew who he was and advised him to get out of town.

3. **Criminal Law § 73— hearsay testimony — definition**

To be hearsay, evidence must be offered to prove the truth of what the declarant said, and it is not hearsay if offered only to prove that the declarant made the statement or for any other purpose.

4. **Criminal Law § 102— statement of district attorney — no motion to strike — no prejudice to defendant**

Defendant was not prejudiced where the district attorney stated that "this is where perhaps a voir dire would be appropriate to establish conspiracy," defendant requested that the jury be instructed to disregard the statement, there was a conference at the bench, the request for the jury instruction was not renewed, and defendant made no motion to strike.

5. **Criminal Law § 89— corroborative statement — failure to request limiting instruction**

The trial court did not err in allowing a witness's written statement to be introduced into evidence over defendant's general objection, since defendant failed to request an instruction restricting the consideration of the statement to corroboration of the witness's testimony.

6. **Criminal Law § 131— incompetent and immaterial evidence — new trial on ground of newly discovered evidence properly denied**

In a prosecution for accessory before the fact to forgery and uttering forged checks, defendant was not entitled to a new trial based upon newly discovered evidence which consisted of (1) testimony by a polygraph expert concerning results of tests administered defendant and (2) testimony by a witness who stated that she had cashed some of the forged checks for the principals, since the first would have been incompetent in a new trial and the second would have been immaterial.

7. **Criminal Law § 134— prayer for judgment continued — sentencing at subsequent term of court proper**

Where the trial judge after verdict ordered that prayer for judgment be continued until the next criminal term, and the presiding judge at that term conducted a hearing before entering judgment that defendant be imprisoned for three years, such sentence was properly imposed.

APPEAL by the State pursuant to G.S. 7A-30(2) from the decision of the Court of Appeals, reported in 29 N.C. App. 457,

224 S.E. 2d 702 (1976), which reversed the conviction of the defendant before *Collier, J.,* at the 5 May 1976 Criminal Session of GUILFORD Superior Court.

Defendant was tried on an indictment, proper in form, with the offenses of forgery and uttering a forged instrument. He was convicted as an accessory before the fact to forgery and an accessory before the fact to uttering a forged instrument. From judgment imposing a prison sentence, defendant appealed. The Court of Appeals held that there was not sufficient evidence to go to the jury and reversed. One member of the panel dissented, and the State appealed. Defendant, by his brief, brought forward other assignments of error not passed upon by the Court of Appeals.

The State's evidence tended to show that Edward George Busby and Ronald McVey purchased some stolen checks and fictitious credit cards from a man named Frasier in Portsmouth, Virginia. Some of the checks had been stolen from a law firm in Greensboro, North Carolina, and others from a construction company. At the time of the purchase of the checks (on or about 1 November 1973), Frasier told the men to go see defendant in Greensboro for help in getting North Carolina driver's licenses for use in cashing the checks.

Busby and McVey went to Greensboro during the last week of November and located defendant, whom Busby had known for over a year. The men told defendant that they needed a car in which to take a driver's test to secure driver's licenses in the fictitious names shown on the credit cards. They told defendant that they needed the identification to enable them to cash stolen checks. Defendant loaned them a car from the car lot at which he was employed and gave the men directions to the license bureau. Busby and McVey successfully procured North Carolina driver's licenses in the fictitious names shown on the credit cards. When they returned from the license bureau, Busby stated to defendant that he was concerned because the highway patrolman who administered the driving test had taken down the license number of the car. Defendant told Busby that if anything ever came of it he would "cover up" for Busby.

Busby and McVey then began cashing forged checks throughout Greensboro, using the North Carolina driver's licenses for identification. After several days, the two men returned to the car lot where defendant was employed and

purchased and paid cash for two cars from defendant. At this time, McVey placed an additional $2,000 in defendant's pocket which, as stated by McVey, was "in return for these checks." Busby stated to the police: "The price for this [the identification cards and checks from Frasier] was $3,000.00 plus taking care of Sears Sauls with some of the money from the cashing of the blank checks in North Carolina."

On or about 11 December 1975, defendant phoned Busby and told him that the FBI had been making an investigation concerning the vehicle which defendant had loaned Busby and McVey. Defendant further stated that the FBI knew who they were and that the two men had "better split."

Defendant did not testify but offered evidence tending to show that he was employed by Leith Lincoln-Mercury and that he sold two cars to two gentlemen for cash. He also offered testimony that it was not unusual for a car from this lot to be loaned to an individual. Defendant further introduced testimony tending to show he was a man of good character.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Attorney General Rufus L. Edmisten and Assistant Attorney General Archie W. Anders for the State appellant.*

*William C. Ray for defendant appellee.*

MOORE, Justice.

Defendant strongly contends that the Court of Appeals correctly held that a nonsuit should have been granted in this case. The basis of this contention is that the evidence is insufficient to show that defendant is an accessory before the fact to the crimes of forgery and uttering forged instruments.

G.S. 14-5, in pertinent part, provides:

"If any person shall counsel, procure or command any other person to commit any felony . . . the person so counseling, procuring or commanding shall be guilty of a felony, and may be indicted and convicted . . . as an accessory before the fact to the principal felony. . . . "

[1] In *State v. Bass*, 255 N.C. 42, 120 S.E. 2d 580 (1961), this Court analyzed the elements necessary to be proved under G.S.

14-5 in order to sustain a conviction for accessory before the fact. These elements were: (a) that under G.S. 14-5 defendant counseled, procured or commanded the principal to commit the offense; (b) that defendant was not present when the principal committed the offense; and (c) that the principal committed the offense.

In *Bass*, the Court further stated:

> "To render one guilty as an accessary before the fact to a felony he must counsel, incite, induce, procure or encourage the commission of the crime, so as to, in some way, participate therein by word or act. . . . It is not necessary that he shall be the originator of the design to commit the crime; it is sufficient if, with knowledge that another intends to commit a crime, he encourages and incites him to carry out his design. . . . " 255 N.C. at 51-52, 120 S.E. 2d at 587. *See also State v. Branch,* 288 N.C. 514, 220 S.E. 2d 495 (1975); *State v. Spicer,* 285 N.C. 274, 204 S.E. 2d 641 (1974).

[2]   Under the principles stated in *State v. Bass, supra,* we hold that there is sufficient evidence to withstand a motion for nonsuit on defendant's charges of accessory before the fact to forgery and to the uttering of forged instruments. A motion to nonsuit is properly denied if there is any competent evidence which will support the charges contained in the bill of indictment or warrant, considering the evidence in the light most favorable to the State and drawing every reasonable inference, deducible from the evidence, in favor of the State. *See also State v. Bell,* 285 N.C. 746, 208 S.E. 2d 506 (1974); 4 Strong, N. C. Index 3d, Criminal Law § 106 (1976).

In present case, evidence for the State tends to show the following:

1. Busby and McVey went to defendant in the last week of November 1973 and told him they needed to get a North Carolina driver's license in a fictitious name in order to cash stolen checks.

2. Defendant gave Busby and McVey directions to the license bureau and instructed them that in order to get the licenses, they would be required to take a written test and show identification.

3. Defendant loaned the men a car to drive to the license bureau.

4. At the license bureau, Busby obtained a North Carolina driver's license in the name of Irvin R. Squires and McVey obtained a North Carolina driver's license in the name of Hugh C. Harrison.

5. On 27 November 1973, Busby filled out a check in the name of E. E. Boone, Jr., a member of the law firm from which the checks had been stolen, as maker. The next day McVey cashed this check at the First Union National Bank in Greensboro, signing the name Hugh C. Harrison and presenting his North Carolina driver's license in the name of Hugh C. Harrison.

6. Defendant personally received $2,000 in cash from Busby and McVey in return for the checks which were forged and cashed.

7. Busby stated to the police: "The price for this [the identification cards and checks from Frasier] was $3,000.00 plus taking care of Sears Sauls with some of the money from the cashing of the blank checks in North Carolina."

8. When Busby relayed his worry to defendant that a patrolman had taken down the license plate number of their car while at the license bureau, defendant told him "not to worry about anything, that if anybody came by, he'd cover up for [him]."

9. Some days later, defendant called Busby to inform him that the police "know who you are" and advised him to get out of town.

Considering the facts outlined above, it is established for the purpose of a motion for nonsuit: (a) that defendant was not present at the time of the forgery and uttering of the instruments; (b) that Busby and McVey in fact committed the crimes of forgery and uttering as principals; and (c) that defendant by his acts encouraged, participated in, and contributed to the commission of the crimes. We hold, therefore, that there was ample evidence to go to the jury.

[3]  We turn now to the other assignments of error brought forward by defendant. He first argues that certain testimony

admitted at trial was hearsay and prejudicial. As is stated in 1 Stansbury, N. C. Evidence § 138 (Brandis Rev. 1973):

> "[W]henever the assertion of any person, other than that of the witness himself in his present testimony, is offered to prove the truth of the matter asserted, the evidence so offered is hearsay. If offered for any other purpose, it is not hearsay."

This is the general rule and has been applied by this Court in cases too numerous to list. To be hearsay, the evidence must be offered to prove the truth of what the declarant said. The evidence is not hearsay if offered only to prove that the declarant made the statement or for any other purpose. *State v. Bryant,* 283 N.C. 227, 195 S.E. 2d 509 (1973); *State v. Griffis,* 25 N.C. (3 Ired.) 504 (1842).

Defendant makes numerous assignments of error to testimony which he contends was hearsay. We find no merit in these contentions. In most instances, the witness was testifying as to what he personally saw or what he said to someone else. This a witness may properly do.

Defendant strenuously argues that witnesses Busby and McVey should not have been permitted to testify that they told defendant that Frasier had sent them to see defendant. As stated in *State v. Dilliard,* 223 N.C. 446, 447, 27 S.E. 2d 85, 86 (1943): "This was a statement made to defendant in explanation of the visit by prosecutrix. Its probative force does not depend, in whole or in part, upon the competency and credibility of any person other than the witness. [Citations omitted.]" *See also State v. Miller,* 282 N.C. 633, 194 S.E. 2d 353 (1973). Likewise, in present case, the testimony by Busby and McVey was merely an explanation of why they had come to see defendant. The probative force of the evidence depended upon the credibility of witnesses Busby and McVey, not Frasier. Thus, these assignments are overruled.

[4] During the trial, the following exchange took place:

> "Q. When you indicated that you were going to buy the checks, what did he say?
>
> MR. RAY: OBJECTION.
>
> THE COURT: Who are you talking about—he?
>
> MR. IDOL: Referring to Mr. Frasier.

THE COURT: SUSTAINED.

MR. IDOL: Your Honor, this is where perhaps a voir dire would be appropriate to establish conspiracy.

MR. RAY: I respectfully move that the jury be instructed to disregard his statement."

Following a conference at the bench, no further request was made by defendant for an instruction to the jury to disregard the comment and defendant did not make a motion to strike the statement made by the district attorney.

In *State v. Gainey*, 280 N.C. 366, 185 S.E. 2d 874 (1971), defendant stated that a witness was not in court and would not testify because "he didn't want to come to court." The prosecutor then asked the question: "He didn't want to go on the stand and perjure himself, did he?" Defendant did not object to the statement and made no motion to strike the statement. This Court held that the solicitor's question was objectionable, but further stated: "However, it is inconceivable that it affected the outcome of the case, and under all the circumstances, it cannot be held prejudicial error. [Citations omitted.]" 280 N.C. at 374, 185 S.E. 2d at 880. In instant case, defendant lodged an objection to the solicitor's request. However, he did not make a motion to strike. After a conference at the bench, the request for the jury instruction was not renewed. Further, we do not feel that the statement was prejudicial to defendant. It is not sufficient grounds for a new trial that there is an error in the trial, "unless . . . it appears that there is a reasonable basis for the belief that, had this error not been committed, a different verdict would have been rendered." *State v. Turner*, 268 N.C. 225, 233, 150 S.E. 2d 406, 412 (1966). In the case at bar, there was more than sufficient evidence to convict defendant and the district attorney's comment could not have had any material effect upon the verdict reached by the jury. Thus, we find no merit in this assignment.

[5] During his testimony, witness Busby read to the jury a written statement which he had previously made to police concerning the forgery and uttering of the checks. He testified that to the best of his knowledge the statement was true. His testimony on the stand was in substantial agreement with the written statement. Over a general objection, the written statement was introduced into evidence. Defendant contends this was error.

A prior consistent statement of the witness to strengthen his credibility is admissible. "And it makes no difference, in this State at least, whether such evidence appears in a verbal or written statement, nor whether verified or not." *Bowman v. Blankenship,* 165 N.C. 519, 522, 81 S.E. 746, 747 (1914). *See also* 1 Stansbury, N. C. Evidence § 51 (Brandis Rev. 1973), and cases cited therein.

When a defendant does not specifically request an instruction restricting the use of evidence which corroborates the testimony of a witness, the admission of the evidence and the failure of the trial judge to give a limiting instruction is not error. *State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745 (1972) ; *State v. Corl,* 250 N.C. 252, 108 S.E. 2d 608 (1959) ; *State v. Lee,* 248 N.C. 327, 103 S.E. 2d 295 (1958).

In *State v. Sawyer,* 283 N.C. 289, 297, 196 S.E. 2d 250, 255 (1973), statements made by the witness Ward were admitted over defendant's general objection and were introduced to corroborate the witness's testimony. In *Sawyer,* Chief Justice Bobbitt stated :

> " 'The general admission of evidence competent for a restricted purpose will not be held reversible error in the absence of a request at the time that its admission be restricted.' 7 Strong N. C. Index 2d, Trial § 17. See also Rule 21, Rules of Practice in the Supreme Court, 254 N.C. 783, 803. Obviously, the testimony to which these assignments refer was offered as tending to corroborate the testimony of Ward. Undoubtedly, if defendant had so requested, the trial judge would have given an explicit instruction to the effect that this evidence was competent for consideration only as corroborative testimony."

Although Rule 21, relied upon in *Sawyer,* has been superseded, we feel that the comment of Dean Brandis is instructive :

> "The new Rules of Appellate Procedure supersede but contain nothing comparable to former Rule 21. . . . However, existing case law rather clearly indicates that the disappearance of Rule 21 will work no change." 1 Stansbury, N. C. Evidence § 52 at 52, n. 59 (Brandis Rev. Supp. 1976).

In the case at bar, defendant failed to request a limiting instruction when the corroborative written statement was admitted. Therefore, this assignment is overruled.

Defendant assigns as error the trial court's denial of his motion to set aside the verdict as against the greater weight of the evidence. Such motion is addressed to the sound discretion of the trial court and its refusal to grant the motion is not reviewable on appeal. *State v. Mason,* 279 N.C. 435, 183 S.E. 2d 661 (1971); *State v. Bridgers,* 267 N.C. 121, 147 S.E. 2d 555 (1966); *State v. Wagstaff,* 219 N.C. 15, 12 S.E. 2d 657 (1941). This assignment of error is therefore without merit.

[6]   After verdict, but before sentence was imposed, defendant moved to set aside the verdict based upon newly discovered evidence. Apparently, defendant intended to move for a new trial based upon this newly discovered evidence. The prerequisites for such motions are set out by Stacy, Chief Justice, in the oft-cited case of *State v. Casey,* 201 N.C. 620, 161 S.E. 81 (1931). *See also State v. Beaver,* 291 N.C. 137, 229 S.E. 2d 179 (1976). One prerequisite is that the newly discovered evidence be competent, material, and relevant.

Defendant, in support of his motion, first offered the testimony of an expert in the field of polygraph. This witness testified that he gave defendant a lie detector test and that this test showed defendant was telling the truth when he testified he did not receive $2,000 from Busby or McVey for assisting them in obtaining North Carolina identification. The witness further testified that the test also showed that defendant was telling the truth when he said that he did not in any way help Busby or McVey obtain North Carolina identification for illegal purposes.

Charlene Handy, the other witness who testified at the hearing on this motion, stated that she had entered a plea of guilty for cashing some of the forged checks for Busby and McVey. She further testified that she did not know Frasier and that she did not know that there was a case against defendant until she read about it in the Greensboro newspaper.

The testimony concerning the lie detector examination would not have been competent. *State v. Jackson,* 287 N.C. 470, 215 S.E. 2d 123 (1975); *State v. Brunson,* 287 N.C. 436, 215 S.E. 2d 94 (1975); *State v. Foye,* 254 N.C. 704, 120 S.E. 2d 169 (1961). The testimony of Charlene Handy was immaterial and it could not have affected the verdict. Moreover, a motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial judge and the re-

fusal to grant the motion is not reviewable in the absence of an abuse of discretion. *State v. Morrow,* 264 N.C. 77, 140 S.E. 2d 767 (1965) ; *State v. Dixon,* 259 N.C. 249, 130 S.E. 2d 333 (1963) ; *State v. Williams,* 244 N.C. 459, 94 S.E. 2d 374 (1956). No abuse of discretion appears on this record. This assignment is overruled.

**[7]** After verdict, the trial judge, Judge Collier, ordered that prayer for judgment be continued until 7 July 1975, the next criminal term. On 7 July 1975, Judge Lupton, the presiding judge, conducted a hearing and then entered judgment that defendant be imprisoned for a term of three years in the State Prison. Defendant contends it was error for Judge Lupton, who was not the trial judge, to pronounce judgment. In support of this contention, defendant's counsel, in his brief, states: "Counsel is frank to admit that after carefully researching the law in this case, he has found no authority to support this position." This Court considered a similar contention in *State v. Graham,* 225 N.C. 217, 34 S.E. 2d 146 (1945). In that case, defendant had been tried before Burney, J., at the January 1944 Term of Bladen Superior Court. Prayer for judgment was continued and defendant was sentenced by Nimocks, J., at the January 1945 Term of Bladen Superior Court. The judgment discloses that Judge Nimocks heard evidence before imposing sentence. Defendant contended that the court, having failed to pronounce judgment at the January Term 1944, at which the defendant was convicted, was without jurisdiction to impose a sentence at a subsequent term. This Court held otherwise, stating:

> "In the absence of a statute to the contrary, sentence does not necessarily have to be imposed at the same term of court at which the verdict or plea of guilty was had, and courts of general jurisdiction, having stated terms for the trial of criminal actions, have the power to continue the case to a subsequent term for sentence.
>
> \*    \*    \*
>
> " . . . It is sometimes found to be expedient, if not necessary, to continue a prayer for judgment and when no conditions are imposed, the judges of the Superior Court may exercise this power with or without the defendant's consent. [Citation omitted.]" 225 N.C. at 219, 34 S.E. 2d at 147. *See also State v. Thompson,* 267 N.C. 653, 148 S.E. 2d 613 (1966).

In the case at bar, Judge Lupton conducted an extensive hearing before passing sentence. He heard the statement made by Busby to the officers and other testimony for the State. Several witnesses, including the defendant, testified in defendant's behalf. Defendant denied accepting any money from Busby or McVey, or in any manner assisting them in obtaining fictitious driver's licenses or in the cashing of forged checks. Further, evidence was introduced that defendant was on federal probation, having been convicted in two cases involving the interstate transportation of a stolen motor vehicle. His probation officer testified concerning defendant's good behavior while on probation. Other witnesses testified as to defendant's good character.

We hold that the sentence, which was determined after hearing, and was within the limits prescribed by statute, was properly imposed by Judge Lupton.

A careful review of the entire record discloses no prejudicial error in the trial in the superior court. The decision of the Court of Appeals is therefore reversed.

Reversed.