STATE OF NORTH CAROLINA v. SAMUEL COFFEY

Nos. 8310SC258 and 8320SC331

(Filed 3 January 1984)

**1. Arrest and Bail § 3.1— seizure of defendant's person**

    A defendant who had landed at an airport to refuel an airplane suspected of having transported marijuana was "seized" within the meaning of the Fourth Amendment when defendant started toward the refueled airplane and a deputy sheriff, though telling him that he was not under arrest, asked him if he would mind waiting while the ownership and correct identification number of the airplane were checked out and patted defendant down for weapons, since a reasonable person would have concluded that he was not free to leave and that he would be forcibly detained if he attempted to do so.

**2. Arrest and Bail § 3.1— probable cause for arrest—collective knowledge of various officers**

    Information which justifies a warrantless arrest need not all be known to the arresting officer or officers, it being sufficient if the various officers who participate in an investigation and arrest have the probable cause information among them.

**3. Arrest and Bail § 3.4— trafficking in marijuana—probable cause for warrantless arrest**

Officers had probable cause to make a warrantless arrest of defendant for trafficking in marijuana at the Raleigh-Durham Airport at which he had landed to refuel an airplane where three different law enforcement agencies had among them the following information: defendant's airplane had landed at the Monroe Airport in the middle of the night without using lights or contacting the control tower and was met by a van; the airplane took off from the Monroe Airport with a sheriff's car in hot pursuit and thereafter landed at the Raleigh-Durham Airport to refuel; the van which met the airplane was found to contain numerous bales of marijuana; in obtaining permission to land at the Raleigh-Durham Airport, the pilot falsely reported the airplane's number; and while waiting for the airplane to be refueled, the pilot falsely told officers that he and defendant had flown in from New Jersey. Therefore, defendant's motion to suppress evidence seized pursuant to his warrantless arrest was properly denied.

**4. Criminal Law § 138— aggravating factor—position of leadership—insufficient evidence**

The evidence was insufficient to support the court's finding as an aggravating factor in sentencing that defendant occupied a position of leadership in the commission of the crime of trafficking in marijuana. G.S. 15A-1340.4(a).

**5. Criminal Law § 138— pecuniary gain aggravating factor**

The trial court erred in finding the "pecuniary gain" aggravating factor where there was no evidence that defendant was hired to commit the crime.

**6. Criminal Law § 138— unusually large amount of contraband aggravating factor**

The trial court erred in finding the "unusually large amount of contraband" aggravating factor in imposing a sentence for trafficking in more than 100 pounds but less than 2,000 pounds of marijuana since the amount of contraband was an element of the offense. G.S. 90-95(h)(1)(b); G.S. 15A-1340.4(a)(1).

**7. Criminal Law § 138— trafficking in marijuana—aggravating factor—contraband especially hazardous to community**

In imposing a sentence for trafficking in marijuana, the trial court erred in finding as an aggravating factor that the contraband involved was especially hazardous to the well-being of the community since the premise upon which the Controlled Substances Act rests is that the substances so controlled are detrimental to the public.

**8. Criminal Law § 138— improper aggravating factor—remand for resentencing**

The case must be remanded for resentencing where the trial court erred in finding certain aggravating factors, notwithstanding the court properly found one aggravating factor and further found that each aggravating factor outweighed all of the mitigating factors.

APPEAL by defendant from *Farmer, Judge* and *Davis, Judge.* Judgments entered 16 December 1982 in Superior Court, WAKE

State v. Coffey

County and 29 November 1982 in Superior Court, UNION County. Heard in the Court of Appeals 28 October 1983.

On 2 August 1982 at approximately 1:30 a.m. Fred Floyd, a pilot with the Jordonaire Corporation, landed his airplane at the Monroe Airport in Union County. While he was sitting in the plane doing his post-flight paperwork he observed a dark van enter his hangar area and then travel toward airport hangar #1. Because of previous problems with unauthorized vehicles on the premises, Floyd telephoned the Union County Sheriff's Department, and while talking with the department dispatcher an airplane landed without lights and taxied, still without lights of any kind, toward hangar #1. Floyd reported this to the sheriff's dispatcher, who immediately telephoned the Charlotte Airport control tower operator, requesting that he identify the airplane that had just landed at the Monroe Airport, but the controller had no knowledge of either the plane or the landing. Meanwhile the dispatcher had radioed all deputies to be on the alert for the dark van, and at 1:45 a.m. a Union County Deputy Sheriff saw and stopped a dark van that was leaving Airport Road at its intersection with Old Highway #74; but while the officer was leaving his car and walking toward the van, it sped away. After a chase of several miles the van was stopped again at 1:57 a.m., but the driver escaped into the night. The van had twenty bales of marijuana in it.

Another deputy sheriff arrived at the Monroe Airport at 1:51 a.m. and shortly thereafter he heard an airplane engine crank up and saw a white aircraft with tail number N50PK moving on a runway apron. The officer turned on his car's blue light and chased the airplane, but it made a sharp turn onto the runway and took off. These events were reported to the Charlotte Airport control tower by the Sheriff's dispatcher, who stated that the aircraft was suspected of transporting marijuana, and requested that the plane be tracked by radar and that they be notified when it landed. The aircraft was tracked by radar until it landed at the Raleigh-Durham Airport at 2:32 a.m. In requesting landing instructions from the tower the pilot said the airplane's number was NP50P rather than N50PK. Upon being informed of the landing, the Union County Sheriff's dispatcher telephoned the Raleigh-Durham Airport, spoke with the air traffic controller and Airport Security Officer Lilly, and requested that the plane and

its occupants be detained and identified. After the plane landed until 3 a.m. when its refueling was completed, the defendant and the pilot were in the Aero Services lobby drinking coffee, where Officer Lilly engaged them in casual conversation. Thereafter defendant and the pilot were detained at the airport by various officers for the purpose of clarifying the number and ownership of the plane, verifying the identity of the occupants, and different pretexts until they were formally placed under arrest at 5:10 a.m. Defendant's fingerprints taken pursuant to the arrest were subsequently found to match fingerprints found on the bales of marijuana that were in the van.

At approximately 3:35 a.m. Captain Waller of the Wake County Sheriff's Department requested permission to search the aircraft, which the pilot granted. During the search two bags were found; one contained a roll of silver duct tape and a wrapper, the other, a green plastic garbage bag, contained a piece of heavy duty plastic. These articles were left on the aircraft. At approximately 4:45 a.m., S.B.I. Agent Turberville, after obtaining the pilot's signature on a consent of search form, searched the aircraft again. In this search marijuana seeds and stems were found in the bottom of the green plastic garbage bag, which was seized as evidence, along with the other bag and its contents.

In Wake County, by a proper bill of indictment, defendant was charged with keeping and maintaining an aircraft for the purpose of keeping or selling marijuana in violation of G.S. 90-108(a)(7). In Union County, by a proper bill of indictment, he was charged with feloniously trafficking in marijuana by having in his possession and under his control marijuana in excess of one hundred pounds but less than two thousand pounds in violation of G.S. 90-95(h)(1)(b). In each case defendant filed a motion to suppress any and all evidence gathered as a result of his detention and arrest and the search of the aircraft. After hearings were conducted in Union County, the motion in that case was denied, and in that case, pursuant to G.S. 15A-979, defendant entered a guilty plea, subject to the final resolution of his motion to suppress, and was sentenced to prison for fifteen years and ordered to pay a fine of $250,000. Then, pursuant to a plea bargain, defendant also pled guilty in the Wake County case, subject to the eventual determination of his motion to suppress in the Union County case, which has the same basis as the Wake County mo-

tion. In the latter case the presumptive sentence of two years was imposed.

The two appeals have been consolidated by agreement.

*Attorney General Edmisten, by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*Marshall H. Karro for the defendant appellant.*

PHILLIPS, Judge.

In contending that his motion to suppress should have been allowed, defendant maintains that his detention and that of the airplane by the Wake County officers at the Raleigh-Durham Airport before he was formally arrested constituted an unlawful seizure in violation of the Fourth Amendment to the United States Constitution. The State responds that no seizure occurred until the defendant was formally arrested at 5:10 a.m. In our opinion neither party is correct.

The Fourth Amendment provides: "The right of people to be secure in their persons . . . against unreasonable searches and seizures shall not be violated and no warrants shall issue but upon probable cause . . . ." The seizure of a person occurs when "in view of all the circumstances surrounding the incident a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 64 L.Ed. 2d 497, 509, 100 S.Ct. 1870, 1877, *reh. denied,* 448 U.S. 908, 65 L.Ed. 2d 1138, 100 S.Ct. 3051 (1980). In *Mendenhall,* the following factors were listed as examples of circumstances which might indicate a seizure: (a) the threatening presence of several officers, (b) the display of a weapon by an officer, (c) some physical touching of the person, and (d) the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

[1] Evidence offered at the suppression hearing tends to show the following: By 3 o'clock the morning involved, when defendant's airplane had been refueled and he was ready to leave the Raleigh-Durham Airport, a uniformed security officer and several armed deputy sheriffs were there; the Union County Sheriff's Department had twice requested that the plane and its occupants

be detained for investigation and the State Bureau of Investigation, which had been drawn into the investigation by the Union County authorities immediately after the plane took off, had notified one of its Raleigh agents to go to the Raleigh-Durham Airport and detain defendant and the airplane; upon defendant starting toward the aircraft, a deputy sheriff, though telling him he was not under arrest, asked if he would mind waiting while the ownership and correct number of the airplane was checked out, and when defendant acquiesced, he was spread-eagled against a car and patted down for weapons. At 3:10 a.m., though defendant was again told that he was not under arrest, he was also told he was "being detained for investigative purposes." At 3:30 a.m. when defendant walked toward the aircraft he was again "asked" by an officer if he would mind staying with them awhile longer. At approximately 3:35 a.m. Captain Waller, an armed undercover agent, advised defendant that an investigation was underway and said, in effect, that if everything was cleared up he would be free to leave. Later, an S.B.I. agent arrived and questioned him; and not long after that when defendant again started to leave he was formally placed under arrest. Some of the officers involved testified that they had no basis for forcefully detaining defendant until shortly before he was arrested and did not try to do so.

Though the trial judge concluded that defendant was free to leave anytime he chose during the first two hours or so he was at the airport, we are of the opinion that defendant was seized at 3 a.m. Under the circumstances that then existed, a reasonable person would have concluded, it seems to us, that he was not free to leave and if he attempted to do so he would be forcefully detained. Having determined that, we must next determine whether the requisite probable cause existed for the seizure.

[2] Whether the officers had probable cause to seize defendant depends upon "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 13 L.Ed. 2d 142, 145, 85 S.Ct. 223, 225 (1964). This does not mean, however, that the information which justifies a warrantless arrest must all be known to the arresting officer or officers; it is sufficient if the various officers who participate in an investigation and arrest

have the probable cause information between them. This principle has been applied and adhered to in many cases. In *United States v. Pitt*, 382 F. 2d 322, 324 (4th Cir. 1967), in responding to a contention that the arresting officer must have *personal* knowledge of the facts constituting probable cause, the Court said: "Probable cause, however, can rest upon the *collective* knowledge of the police, rather than solely on that of the officer who actually makes the arrest." (Emphasis in original.) The reason for this was explained in *Moreno-Vallejo v. United States*, 414 F. 2d 901, 904 (5th Cir. 1969), *cert. denied*, 400 U.S. 841, 27 L.Ed. 2d 76, 91 S.Ct. 82 (1970), where it was said:

> The courts have had occasion to recognize that effective police work in today's highly mobile society requires cooperative utilization of police resources. They have, accordingly, asserted that knowledge in one sector of a police system can be availed of for action in another, assuming some degree of communication between the two.

*United States v. One 1975 Pontiac Lemans*, 621 F. 2d 444 (1st Cir. 1980); *United States v. Ashley*, 569 F. 2d 975, *reh. denied*, 573 F. 2d 85 (5th Cir.), *cert. denied*, 439 U.S. 853, 58 L.Ed. 2d 159, 99 S.Ct. 163 (1978); and J. Hall, *Search and Seizure* § 5-30 (1982) are to the same effect. Implicitly, if not explicitly, *Chambers v. Maroney*, 399 U.S. 42, 26 L.Ed. 2d 419, 90 S.Ct. 1975, *reh. denied*, 400 U.S. 856, 27 L.Ed. 2d 94, 91 S.Ct. 23 (1970) stands for the same proposition.

[3] The investigation of this crime and arrest of the defendant required the efforts of three different law enforcement departments—the Union County Sheriff's Department, the Wake County Sheriff's Department, and the State Bureau of Investigation. In a short space of time, these three agencies gathered and received information from various sources and each other and extensively communicated with each other about the information obtained. The issue, therefore, is: Whether the three law enforcement groups between them had sufficient information to reasonably justify the belief at 3 o'clock that morning that a crime had been committed and defendant was involved in it. We believe that they had. They had information which, among other things, indicated that: In the middle of the night, for no known or apparent legal purpose, defendant's plane landed and taxied without lights at the

Monroe Airport at about the same time a dark van, also without authority and for no known legal purpose, approached where the plane was; the plane's landing and departure were made without contacting either the control tower at the nearby Charlotte Airport or anyone in authority at the Monroe Airport; after taking off from the Monroe Airport with a blue-lighted sheriff's car in hot pursuit, the plane stayed in the air until it landed at Raleigh-Durham and defendant was on the plane when it landed; shortly after the plane took off the van was seen near the Monroe Airport on Airport Road and when ran to ground a few minutes later it contained numerous bales of marijuana; in obtaining permission to land at Raleigh-Durham Airport the pilot falsely reported the plane's number; and while waiting for the plane to be refueled, in defendant's presence, he falsely told the officers he and defendant had flown in from New Jersey. These circumstances gave the officers reasonable grounds for believing that: The bales of marijuana, which ended up in the fleeing van, probably came from the defendant's airplane, the transfer was accomplished during the surreptitious midnight rendezvous of the two vehicles at the Monroe Airport, and defendant had knowledge of these facts. We therefore hold that the warrantless seizure of the defendant by the Wake County authorities at 3 o'clock that morning was lawful and the motions to suppress the evidence obtained pursuant thereto and dismiss the case were properly disallowed. That the officers apparently were under the impression that they did not have sufficient basis to arrest defendant earlier than they did is beside the point; the defendant's rights are governed by the law, rather than by the officers' misunderstanding of it.

Defendant next contends that the search of the aircraft was illegal because the consent to search was not given voluntarily. This contention is based upon the premise that he was illegally seized and that since no intervening events occurred to attenuate the consent to search the plane, the search was illegal. Suffice it to say, we have concluded that the seizure of defendant was proper. We have further examined the circumstances surrounding the two consents to search given by the pilot of the aircraft and find no evidence that they were obtained by coercion. We therefore conclude that both searches were freely consented to and neither search was unlawful.

Defendant also raises the issues of whether there was sufficient probable cause for the issuance of arrest warrants and whether the evidence obtained from the search of the aircraft should be excluded as fruits of the poisonous tree. We do not reach these issues because of our determinations that the seizures were proper and the consents to search were freely given.

Defendant also brings forth and argues seven assignments of error in which he contends the trial court erred by finding or failing to find certain facts in his order denying defendant's motion to suppress. We need not reach these questions, since we have determined that although the trial court improperly concluded the defendant was not seized prior to his formal arrest, the order denying the motion to suppress was nevertheless correct, since defendant's seizure was lawful.

Finally, defendant excepts to the Union County trial court's judgment sentencing him to imprisonment for the maximum term allowed and fining him $250,000. In doing so, the court found and used the following statutory factors in aggravation of the offense: (a) The defendant occupied a position of leadership in the commission of the offense; (b) The offense was committed for hire or pecuniary gain; (c) The offense involved an unusually large quantity of contraband; and (d) The defendant had a prior conviction or convictions for criminal offenses punishable by more than 60 days confinement. The court found as an additional factor in aggravation "that the contraband in question was especially hazardous to the well-being of the community." The court found two factors in mitigation and found that each factor in aggravation outweighed all the factors in mitigation. Defendant contends that using each of the above factors as a basis for sentencing him to a longer term than the presumptive sentence for this offense violated the Fair Sentencing Act. With one exception, we agree.

[4-6] It was improper to find that defendant occupied a position of leadership in the commission of this crime, because the record contains no evidence to that effect and G.S. 15A-1340.4(a) requires that aggravating factors be found by a preponderance of the evidence. The record shows only that defendant participated in this criminal venture with his co-defendant Thomas Duis Ritz, who piloted the airplane; it does not show that either influenced, led,

or had dominion over the other. It was also improper to use "pecuniary gain" as an aggravating factor to increase defendant's sentence because the crime defendant was charged with, trafficking in marijuana, inherently involved the hope for pecuniary gain. *State v. Huntley*, 62 N.C. App. 577, 303 S.E. 2d 330 (1983). Since this present case was appealed, the Legislature amended the Act to make explicit in regard to pecuniary gain what was only inferable before, namely, that the pecuniary gain factor is limited to cases where crime is committed for hire. No evidence that defendant was hired to commit this crime was before the court. It was likewise improper to find and use the "unusually large amount of contraband" factor because the amount of contraband involved was an element of the offense that defendant was charged with — trafficking in marijuana by having in his possession in excess of one hundred pounds but less than two thousand pounds — and G.S. 15A-1340.4(a)(1) provides that "evidence necessary to prove an element of the offense may not be used to prove any factor in aggravation." The State argues that since it had to show possession of only one hundred pounds in order to convict defendant, the poundage above that is usable in aggravation of the offense. We disagree. The Legislature would not have established a presumptive sentence for possessing between one hundred pounds and two thousand pounds of marijuana if it had intended to permit judges to punish possessors of different quantities of contraband between the two limits as they see fit.

[7] Finally, it was improper to use as an aggravating factor that the contraband involved was especially hazardous to the well-being of the community because that, too, is inherent to the crime that defendant was convicted of, and, for that matter, is why the Legislature made trafficking in marijuana a crime in the first place. Basic to the letter and spirit of the Fair Sentencing Act is that circumstances that are inherent in the crime convicted of may not be used as aggravating factors in order to increase the punishment beyond what the Legislature has set for the offense involved. The premise upon which the North Carolina Controlled Substances Act rests is that the substances so controlled are detrimental to the public; with that necessarily in mind the Legislature established presumptive sentences for the different crimes involving marijuana. If these sentences could be enlarged because of the same facts that caused them to be established in

State v. Coffey

the first place, the Legislature's judgment in the matter would be of no effect. But finding and using as an aggravating factor that defendant had a previous conviction punishable by more than sixty days imprisonment was not improper. The basis for defendant's contention in this regard is that the State did not show whether defendant was or was not indigent in those convictions, and whether he was represented by or waived counsel, as G.S. 15A-1340.4 seemingly provides. Under *State v. Thompson*, 309 N.C. 421, 307 S.E. 2d 156 (1983), it is up to the defendant to show that grounds exist for disregarding previous convictions that have been proven under the Act, and defendant made no such showing.

[8] The State argues that since the trial court found that each factor in aggravation outweighs all the factors in mitigation, the case need not be remanded for resentencing if any aggravating factor was properly found and considered. We disagree. Justice Meyer, writing for the Supreme Court in *State v. Ahearn*, stated:

> [I]t must be assumed that every factor in aggravation measured against every factor in mitigation with concomitant weight attached to each, contributes to the severity of the sentence — the quantitative variation from the norm of the presumptive sentence. . . . For these reasons, we hold that in every case in which it is found that the judge erred in a finding or findings in aggravation and imposed a sentence beyond the presumptive term, the case must be remanded for a new sentencing hearing.

307 N.C. 584, 602, 300 S.E. 2d 689, 701 (1983).

Because we find that the trial court's denial of defendant's motions to suppress and dismiss were proper, we affirm the defendant's convictions in Wake and Union Counties. The Union County case is remanded for resentencing in accord with the provisions of the Fair Sentencing Act and this opinion.

No. 8310SC258: Affirmed.

No. 8320SC331: Affirmed as to guilt; remanded for resentencing.

Judges WEBB and EAGLES concur.