State v. Kimbrell

---

Affirmed.

Judges ARNOLD and EAGLES concur.

STATE OF NORTH CAROLINA v. CHARLES RAY KIMBRELL

No. 8622SC545

(Filed 20 January 1987)

1. **Criminal Law § 34.2— improper questions about other misconduct — error not prejudicial**

In a prosecution of defendant for being an accessory before the fact to second degree murder, the trial court erred in allowing the State to cross-examine defendant about his knowledge and participation in "devil worshipping" and about his son's attempt to smuggle marijuana to him while defendant was being held in custody, but such errors were not sufficiently prejudicial to warrant a new trial in light of the substantial evidence of defendant's guilt. N.C.G.S. 8C-1, Rules 403, 608(b) and 610.

2. **Homicide § 31.7— accessory before the fact to second degree murder — evidence to prove offense improperly used to prove aggravating factor**

In a prosecution of defendant for being an accessory before the fact to second degree murder, the trial court erred in finding as an aggravating factor that defendant dispensed cocaine to the principals, promised to forgive their drug debts, and furnished them with murder weapons, since this same evidence was necessary to prove the offense itself and could not also be used to prove a factor in aggravation.

Judge BECTON dissenting.

APPEAL by defendant from *Washington, Judge*. Judgments entered 14 November 1985 in DAVIDSON County Superior Court. Heard in the Court of Appeals 18 November 1986.

Defendant was charged and tried on two counts of being an accessory before the fact to second degree murder under N.C. Gen. Stat. § 14-17. The State's evidence tended to show, in pertinent part, that:

From early 1983 through May 1984, James Hunt had been selling cocaine and dilaudids which defendant supplied to him. On five or six occasions defendant asked Hunt if he would like to make some more money by killing someone for him. Defendant ex-

---

---

plained that he wanted James to kill Ricky Norman because Ricky owed him a lot of money for drugs.

On 18 May 1984, Hunt and his sister, Donna Hunt, visited defendant's residence to "shoot dope." Defendant was "mad" at James because James owed him approximately $1,200. Defendant nevertheless supplied the Hunts with free narcotics, and the three "shot dope" late into the evening, at which time defendant again raised the subject of killing Ricky Norman. Defendant offered to forgive James' debt of $1,200 if James would kill Norman. Defendant indicated that James should also kill Norman's wife, Pam, if she were present, "because she'd be a witness."

At defendant's behest, James Hunt and his sister went to the Norman residence, armed with a knife supplied by defendant, but they found no one at home. The Hunts returned to defendant's house, where defendant gave James a handgun. The Hunts again went to the Norman residence. The Normans were home this time, and James shot and killed them both. James also took Ricky Norman's wallet, which contained approximately $1,500.

The Hunts were subsequently arrested and agreed to testify against defendant pursuant to plea agreements.

Defendant testified on his own behalf at trial. On cross-examination the State was permitted to question defendant about his knowledge and participation in "devil worship." The State was also permitted to cross-examine defendant about an attempt by defendant's son to sneak marijuana to him in violation of N.C. Gen. Stat. § 14-258.1(a) while defendant was being held in custody.

The jury returned verdicts of guilty of two counts of accessory before the fact to second degree murder. From judgments of imprisonment, defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Lucien Capone III, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender David W. Dorey, for defendant.*

WELLS, Judge.

[1] Defendant contends the court erred in allowing the State to cross-examine him about his knowledge and participation in "devil worshipping." Defendant also contends that the court erred in allowing the State to cross-examine him about his son's attempt to "sneak" or "smuggle" marijuana to him while defendant was being held in custody. For the reasons below, we hold that the court erred in both instances by permitting such questioning, but that these errors were not sufficiently prejudicial to warrant a new trial in light of the substantial evidence of defendant's guilt.

After defendant's arrest, he made a statement while in custody in which he referred to his knowledge of and participation in "black magic" with a group that included Ricky Norman and others. The State's cross-examination of defendant was based, in part, on this prior statement. Defendant's cross-examination proceeded, in pertinent part, as follows:

Q. Have you done any devil worshipping?

A. No, sir.

MR. KLASS: Object.

THE COURT: Overruled.

MR. ZIMMERMAN: Thank you.

Q. Have you ever been to any ceremonies?

A. No, sir.

Q. Have you seen things at night?

A. No, sir.

Q. Birds, hawks, dogs, a number of things?

A. No, sir.

Q. You don't recall telling Special Agent Leggett of the SBI that you saw those things?

A. No, sir.

Q. "I saw a goat head made out of brass in the vision"?

MR. LOHR: Objection.

THE COURT: Overruled.

Q. And you and Luther on Friday the 13th — April, Friday the 13th, you-all were supposed to go to a seance, isn't that right?

A. That's what Bobby Tucker said.

Q. Huh?

A. That's what Curtis Robert Tucker said.

Q. Well, you were supposed to go, weren't you?

MR. LOHR: Objection.

THE COURT: Overruled.

A. I was invited.

THE COURT: You may answer the question.

A. (continuing) I was invited to it, and when I got up on Main Street to go down toward Luther's house I seen some police officers going down towards Luther's, and I kept going straight.

Q. A police officer?

A. I seen two carloads going down towards Luther's.

Q. And of course that scared you?

A. Yes, sir.

. . .

Q. Did you tell them you wanted to show them something that Bob and Luther gave you about some little swords — some little bitty swords, something about they had power?

A. That's what they told me.

MR. LOHR: Objection.

THE COURT: Overruled.

Q. Go ahead. What? Answer the question. You've got to answer the question.

A. I told them about the swords, yes, sir. I wasn't talking about myself, I was explaining about Luther Flynn at the time, if you'll remember.

Q. You had one of these black magic bibles, too, didn't you?

A. No, sir.

MR. LOHR: Objection.

THE COURT: Overruled.

Q. Who had the bible? Who had the bible?

A. Luther Flynn had the bible.

Q. Had he ever read any of it to you?

A. Yes, sir.

MR. LOHR: Objection. Objection.

THE COURT: Overruled.

Q. Were Ricky and Pam Norman involved in this black magic stuff?

A. I don't know, sir.

Q. What did that consist of? Worshipping the devil?

MR. LOHR: Objection.

THE COURT: Overruled.

A. I don't know, sir.

Q. What did that black bible Luther had have to say about it?

MR. LOHR: Objection.

THE COURT: Overruled.

Q. You can answer.

A. It's just a bunch of words. I don't know. I didn't pay any attention to it.

The State contends that this evidence was admissible under N.C. Gen. Stat. § 8C-1, Rule 608(b) of the North Carolina Rules of Evidence, which provides that:

(b) *Specific instances of conduct.*—Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The State argues that "defendant's involvement and belief in 'devil-worshipping' is conduct directly related to the issue of his truthfulness since 'devil-worship' is by definition, glorification of the archetypal embodiment of evil and deceit." However, Rule 610 expressly provides that:

Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature his credibility is impaired or enhanced; provided, however, such evidence may be admitted for the purpose of showing interest or bias.

Accordingly, even assuming that this evidence was probative of defendant's veracity as the State contends, it was nevertheless inadmissible under Rule 610 for that purpose. *Cf. State v. Reilly*, 71 N.C. App. 1, 321 S.E. 2d 564 (1984), *aff'd on other grounds*, 313 N.C. 499, 329 S.E. 2d 381 (1985) and 1 Brandis, *North Carolina Evidence* § 55 (1983 Supp.).

The commentary to Rule 610 provides that "[e]vidence probative of something other than veracity is not prohibited by the rule." In this regard the State contends that this evidence was admissible to show motive and identity under Rule 404(b). Specifically, the State contends that this evidence supported its theory that defendant and the Normans "were involved in a group tied together by drug dealings, black magic and other illicit activities, and that defendant was motivated to have the Normans killed

after he was 'cast out' of the group and the Normans interfer[ed] with [his] drug business."

However, even assuming that this evidence was admissible under Rule 404(b) to show motive, "the determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." *State v. DeLeonardo*, 315 N.C. 762, 340 S.E. 2d 350 (1986).

We hold that this evidence was inadmissible to show motive under Rule 403 in that its potential for undue prejudice to defendant clearly outweighed its nominal probative value. Prior to defendant's cross-examination, the State presented substantial evidence of defendant's primary motivation for having the Normans killed: that Ricky Norman owed defendant money for drugs and was interfering with his drug business. The fact that defendant and the Normans all belonged to a group in which the members participated in "black magic" and from which defendant felt "cast out" does not support defendant's primary motivation for having the Normans killed according to the State's theory in its case in chief. Rather, this evidence, if anything, merely furnished the State with an *additional* possible motive for defendant's actions.

At the same time, as defendant stresses, accusations or insinuations of participation in "devil worship" clearly carry with them a great potential for prejudicial impact on defendant's credibility. This potential for prejudice is evidenced, in part, by the prohibitions established by Rule 610.

The State essentially concedes that evidence of defendant's son's attempt to smuggle marijuana to him was inadmissible under Rule 608(b) but argues that defendant has failed to show prejudicial error. The impermissible cross-examination in this instance and regarding the references to "devil worship" would constitute reversible error if it could be shown that "a reasonable possibility that, had the error[s] in question not been committed, a different result would have been reached. . . ." N.C. Gen. Stat. § 15A-1443(a); *State v. Scott*, 318 N.C. 237, 347 S.E. 2d 414 (1986).

We hold, however, that there is no reasonable possibility that had these errors not been committed, a different result would

have been reached at trial and that the error was harmless in the light of the other evidence properly admitted at the trial. *State v. Morgan*, 315 N.C. 626, 340 S.E. 2d 84 (1986). The State, through the testimony of James and Donna Hunt, presented substantial evidence that defendant was an accessory before the fact in that he was absent from the scene when the killings were committed but he participated in the planning or contemplation of the killings in such a way as to counsel, procure or command the Hunts to commit them. *See State v. Small*, 301 N.C. 407, 272 S.E. 2d 128 (1980).

**[2]** Defendant contends that the court erred in finding as a non-statutory aggravating factor in sentencing defendant for each conviction that defendant

> dispensed cocaine to the principals, James Clay and Donna Hunt, in substantial quantity while inducing them to kill and murder the two (2) victims; he likewise promised to forgive a debt of approximately $1,200.00 from Clay Hunt and a debt of approximately $600.00 from Donna Hunt; the defendant furnished a knife and a pistol, ".357 Magnum," to the principals to use in the crime; and finally, the principals who were solicited and procured by the defendant committed murder in the act of robbery and without any legal provocation.

Defendant contends that use of this factor to aggravate his sentences for being an accessory before the fact to the murders of Ricky Norman and Pamela Norman is prohibited by N.C. Gen. Stat. § 15A-1340.4(a)(1), which provides that "[e]vidence necessary to prove an element of the offense may not be used to prove any factor in aggravation. . . ." We agree. This evidence clearly was necessary to show that defendant "participated in the planning or contemplation of the crime in such a way as to 'counsel, procure, or command' the principal[s] to commit it." *Small, supra. See also State v. Sauls*, 29 N.C. App. 457, 224 S.E. 2d 702, *rev'd on other grounds*, 291 N.C. 253, 230 S.E. 2d 390 (1976), *cert. denied*, 431 U.S. 916 (1977). (An accessory before the fact is one who furnishes the means to carry on the crime through the agency of or in connection with the perpetrator, who is a confederate, who instigates a crime.)

We have stated previously:

> Basic to the letter and spirit of the Fair Sentencing Act is that circumstances that are inherent in the crime convicted of may not be used as aggravating factors in order to increase the punishment beyond what the Legislature has set for the offense involved. . . . If these sentences could be enlarged because of the same facts that caused them to be established in the first place, the Legislature's judgment in the matter would be of no effect.

*State v. Coffey*, 65 N.C. App. 751, 310 S.E. 2d 123 (1984).

For the foregoing reasons, we hold that use of this evidence as an aggravating factor to enhance defendant's sentences was improper under G.S. § 15A-1340.4(a)(1). Both cases thus must be remanded for new sentencing hearings. *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983).

In Nos. 85CRS151 and 85CRS152, no error in the trial, remanded for resentencing.

Judge ORR concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

Believing the evidence connecting defendant with a sect of devil worshippers, who practiced "black magic," cast spells and used satanic bibles, was irremediably prejudicial, I dissent.

In this case, the relative veracity of the State's two accomplice witnesses and the defendant was critical. Both the two co-defendants turned state's evidence confessed to murdering and robbing the Normans. Both were admitted drug addicts with prior criminal records. I cannot confidently assume that they would have been more worthy of belief that defendant absent the overreaching by the District Attorney whose questions were designed to arouse the passion and prejudice of the jury. I, therefore, believe the error was harmful, not harmless.